## Case No. 103.

### AHL et al. v. THORNER.

[2 Bond, 287;[1] 3 N. B. R. 118, (Quarto, 29;) 16 Pittsb. Leg. J. 78; 2 Amer. Law T. 104; 1 Chi. Leg. News, 337; 1 Amer. Law T. Rep. Bankr. 129.]

District Court, S. D. Ohio. June Term, 1869.

BANKRUPTCY—FRAUDULENT TRANSFERS—PREFERENCES.

A payment by the maker of a promissory note to an indorser, the maker knowing his insolvency at the time, and the indorser receiving such payment, having reasonable cause to believe the maker to be insolvent, is a fraudulent preference of such indorser within the meaning of section 35 of the bankrupt act; and the assignee in bankruptcy may sue for and recover the amount so paid, for the benefit of all the creditors.

[Cited in Graham v. Stark, Case No. 5,676; Martin v. Toof, Id. 9,167; Goodenow v. Milliken, Id. 5,535; Hall v. Wager, Id. 5,951; Thomas v. Woodbury, Id. 13,916; Sill v. Solberg, 6 Fed. Rep. 477. Distinguished in Blair v. Allen, Case No. 1,483.]

[See Webb v. Sachs, Case No. 17,325; In re George, Id. 5,325; Giddings v. Dodd, Id. 5,405; Silverman's Case, Id. 12,855.]

[In bankruptcy. Petition by Daniel Ahl, Jr., and Alexander Buchman, assignees of Sugarman & Frank, against Samuel Thorner, to recover money paid in fraud of the bankrupt act. Decree for plaintiffs.]

Moulton, Bateman & Johnson, for plaintiffs.

Long & Hoeffer, for defendant.

LEAVITT, District Judge. This is a petition in chancery, prosecuted by said Ahl and Buchman, as assignees in bankruptcy, to recover from the defendant, Thorner, the sum of $4,990, which they allege to have been paid by said Sugarman & Frank to Thorner, in fraud of the bankrupt law of the United States. The material facts involved may be comprehensively stated as follows: In July, 1867, the said Sugarman & Frank were doing business in Memphis, in the state of Tennessee, as partners. Some time during that month, at the request of Sugarman, the said Thorner, residing at Cincinnati, and the brother-in-law of said Sugarman, and then a member of the firm of Heidelbach, Seasongood & Co., indorsed the promissory note of Sugarman & Frank for $5,000, payable to the order of Thorner ninety days after date. This note was discounted by Espy, Heidelbach & Co., bankers at Cincinnati. Not being paid at maturity, on October 21, 1867, a renewed note for the same sum, at ninety days, was given by Sugarman & Frank, and indorsed by Thorner. This note, by its terms, would have been due January 23, 1868. On the 16th of that month the defendant Thorner received from Sugarman & Frank bills or drafts on a house in New York for $5,300, with instructions to apply them to the note held

[1][Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

by Espy, Heidelbach & Co. These bills or drafts were accepted by said bankers in payment of said note, and the note was taken up and canceled. The difference between the proceeds of the drafts or bills remitted to Thorner, and the sum due on Sugarman & Frank's note, was paid by direction of Sugarman to his wife, then living at Cincinnati. The bill sets forth that on May 11, 1868, a petition was filed in this court by certain creditors of the said Sugarman & Frank, alleging various acts of bankruptcy by them, and praying that they might be adjudged bankrupts. And on the 21st of September, in the year last named, the firm, and the individual members of the firm, were decreed to be bankrupts, and the said Ahl & Buchman were duly appointed and qualified as their assignees. They allege in their bill that at the time Sugarman & Frank remitted to Thorner the drafts to pay the note for $5,000 held oy Espy, Heidelbach & Co., they were insolvent, and that Thorner had just cause to believe them to be insolvent, and that, therefore, the payment of the note was an unlawful preference to Thorner, and illegal and void as in violation of the bankrupt act. And the assignees allege a right to recover from Thorner the sum so paid, to be applied to the claims of the firm creditors of Sugarman & Frank.

Before referring to the evidence, and with a view to a more intelligent application of the law to the facts, it may be well to notice briefly the provisions of section 35 of the bankrupt act, so far as they apply to the transactions in question. That section declares: "That if any person, being insolvent, or in contemplation of insolvency, within four months before the filing of the petition by or against him, with a view to give a preference to any creditor, or person having a claim against him, or who is under any liability for him, . . . makes any payment, pledge, assignment, transfer, or conveyance, . . . the person receiving such payment, pledge, assignment, transfer, or conveyance, having reasonable cause to believe such person is insolvent, and that such . . . payment, pledge, assignment, or conveyance is made in fraud of the provisions of this act, the same shall be void, and the assignee may recover the property or the value thereof, from the person so receiving it, or so to be benefited thereby." The section then provides, that if any person being insolvent, or in contemplation of insolvency within six months before the filing of the petition by or against him, shall make any payment or transfer of property to a person having reasonable cause to believe him to be insolvent, or to be acting in contemplation of insolvency, and that such payment, transfer, etc., is made with a view to prevent his property from coming to his assignee, or prevent the same from being distributed under the act, or in any way to impede, impair, delay, or defeat the operation of the act, the same shall be void, and the assignee may recover the property or the value as assets of the bankrupt.

In deciding whether the transaction involved is within the prohibitions of section 35, and therefore void, the following inquiries necessarily arise: 1. Was the firm of Sugarman & Frank insolvent, or acting in contemplation of insolvency in the payment of their note, on which Thorner was liable as indorser? 2. Was the note paid with a view to a preference to Thorner over other creditors of Sugarman & Frank? 3. Had Thorner reasonable cause to believe that Sugarman & Frank were insolvent? 4. Was Thorner under such a liability as indorser for the firm, as that the payment of the note inured to his benefit within the meaning of said section of the bankrupt act?

I. As to the insolvency of the firm of Sugarman & Frank, on January 16, 1868, when Thorner paid their note to Espy, Heidelbach & Co., with the proceeds of the drafts remitted to him by Sugarman & Frank, there is no room for doubt. The evidence proves conclusively that in December, 1867, the firm was unable to meet its liabilities. There were large debts owing to Cincinnati houses, which were past due and unprovided for. The debts of the firm then were in excess of $100,000, and their assets and means of payment, according to the estimate of witnesses well acquainted with their affairs, would not pay more than twenty-five or thirty cents on the dollar. It is in evidence, by Seasongood, a witness in the case, that in December, 1867, Sugarman admitted to him that the firm were unable to pay their debts. The same witness states that he considered the firm insolvent in the spring of 1867.

II. The second inquiry is, whether Sugarman & Frank, in paying the note to Espy, Heidelbach & Co., on which Thorner was indorser, intended a preference to him, within the meaning of section 35 of the bankrupt act. This is a question of intention, which can only be determined by a reference to the facts connected with the transaction. And here the familiar principle, that every man intends what he knows must be the necessary result of his acts, applies. Sugarman & Frank must have known the firm was hopelessly insolvent when the note in question was paid. It is impossible, therefore, not to infer that in paying this note they were virtually preferring Thorner to other creditors. The effect of the payment clearly was to withdraw so much from the assets of the firm, which should have been applied to the equal benefit of all its creditors. This was clearly in conflict with the policy and the requirements of the bankrupt law. Thorner, as their indorser, had no privilege or immunity superior to those of the general creditors.

III. The next inquiry is whether Thorner had reasonable cause to believe Sugarman & Frank were insolvent at the time the note was paid. On this point the evidence is clear and conclusive. Thorner was apprised of the fact that the claim of Seasongood, Heidelbach & Co., of which he was then a member, against Sugarman & Frank for upward of $6,000, was entered in the books of the former firm to the account of profit and loss, with the consent and knowledge of Thorner. It is also in evidence that one of the firm of Seasongood, Heidelbach & Co. offered to sell the claim of that firm on Sugarman & Frank to Thorner at fifty cents on the dollar, which Thorner declined. It is also proved that during the month of December, Sugarman was in Cincinnati asking his creditors for an extension, and that several meetings of the creditors were held to confer on that question, at several of which Thorner was present. It is also in evidence that Thorner visited Memphis some time before these meetings of creditors, and upon his return admitted in conversation that he had advised Sugarman & Frank to apply for the benefit of the bankrupt act. These facts, with others that might be referred to, prove conclusively not only that the firm was notoriously insolvent, but that Thorner was fully advised of its insolvency.

IV. The only remaining question is, whether Thorner's liability, as indorser for Sugarman & Frank, was such that the payment of the note inured to Thorner's benefit within the meaning of section 35 of the bankrupt act. On this point, there seem to be no decisions of any of the courts in bankruptcy that are directly applicable. And the court is called upon to decide the question in view of the construction to be given to the section referred to. The first part of that section before quoted, provides that any payment, pledge, assignment, transfer, or conveyance by a person being insolvent, or in contemplation of insolvency, if the person to whom the same is made is to be benefited thereby, and has reasonable cause to believe such person to be insolvent, and that the same is made in fraud of the provisions of the law, shall be void; and the assignee is authorized to sue for and recover the value, from the person receiving the same, "or so to be benefited." And as throwing some light on the question of the construction of these provisions of section 35, it is proper to note that by section 39, which enumerates the causes for which a person may be declared a bankrupt, it is provided that a payment, transfer, etc., to any person or persons who are or may be liable as "indorsers, bail, sureties, or otherwise, with intent to defeat or delay the operation of the act," or to give a preference to any creditor, shall be a ground for an adjudication of bankruptcy. This is only referred to as showing that although the term "indorser" is not specifically used in section 35, it was the clear intention of the law to make any payment or preference to an indorser or other surety fraudulent and void, where the other elements in the transaction existed to give it that character. The only question, therefore, arising under the fourth inquiry suggested is, whether the sending the eastern drafts, by Sugarman & Frank, to Thorner, to be applied by him to the payment of the $5,000 note held by Espy, Heidelbach & Co., on which Thorner was indorser, was a payment to him, as the person to be "benefited thereby," within the clause of section 35 referred to. The argument mainly insisted on by the counsel for the defendant is, that as the note held by the bankers on Sugarman & Frank was taken up by Thorner a few days before its maturity, he was then under no liability as indorser, and the payment of the note by Sugarman & Frank did not inure to his benefit, in the sense of making the payment with an intent to give a preference within the meaning of the law. It seems to the court this construction of the statute is too limited to meet either the spirit or intent of the law. While it is true Thorner's legal liability could not be legally enforced, as indorser, until the maturity of the note and demand of the maker, and notice of non-payment, yet, in the statutory sense of the term, there was a liability by Thorner from the date of the indorsement. He was the person to be benefited by the payment, whether made before or after the maturity of the note. He was thereby relieved from his liability, and therefore beneficially interested in the payment. And if Sugarman & Frank were insolvent at the time of the payment, and Thorner had reasonable cause so to believe, it was a fraudulent preference within the meaning of the law, without reference to the means or agency by which Sugarman & Frank made the payment. They were in a condition of insolvency, in which any appropriation of their means to pay or indemnify a creditor, who was aware of such insolvency, is condemned by the statute. It was a preference to one liable for him, and to be benefited thereby, which he had no right to make.

It is further contended by defendant's counsel that if the payment of the note imports a fraudulent preference, it was a preference to the bankers who held the note, and not to Thorner, the indorser. That this view can not be sustained is clear from two considerations: First, there is no proof or pretense that Espy, Heidelbach & Co. were apprised of the insolvency of Sugarman & Frank, and therefore the payment to them was not a preference in fraud of the law; second, they were not the parties benefited by the payment, as Thorner's indorsement made them wholly safe, as he is admitted to have been entirely solvent, and able to meet any demand against him. It was therefore, of no importance to them whether Sugarman & Frank paid the note, either before or at its

maturity, as they would have been paid at once by the indorser when the note became due. The court, from the views stated, must hold the defendant liable for the amount paid to Espy, Heidelbach & Co., to be appropriated by the plaintiffs as assignees of Sugarman & Frank, for the equal benefit of all their creditors entitled to make proof of their accounts and claims.