## Case No. 3,183.

COOKINGHAM et al. v. MORGAN et al.

[7 Blatchf. 480;[1] 5 N. B. R. 16.]

Circuit Court, N. D. New York. June Term, 1870.

**TRANSFER BY INSOLVENT TRADER—PROOF OF DEBT BY TRANSFEREE.**

1. A transfer of property made by a bankrupt trader, when he was insolvent, to a person who then had reasonable cause to believe such insolvency, such transfer having been made with the intent on the part of both parties to give a preference to the transferee, as a creditor, *held* void, and the transferee excluded from proving his debt as a claim against the estate of the bankrupt.

[Cited in Curran v. Munger, Case No. 3,487; Fairbanks v. Amoskeag Nat. Bank, 38 Fed. 634.]

2. The assignees in bankruptcy were, in this case, *held* to be entitled to recover back the property transferred, and the value of any of it that had been sold, with interest from the time they demanded it; and, as the transferee had not acted in good faith and under an honest mistake, he was not allowed amounts which he had paid to obtain the benefit of the transfer.

[Cited in Sill v. Solberg, 6 Fed. 477.]

[In equity. Suit by Henry J. Cookingham and others against Sewell S. Morgan and others to set aside a transfer as in fraud of the bankrupt act.]

George W. Smith and A. J. & I. C. McIntosh, for plaintiffs.

Sewell S. Morgan, for defendants.

WOODRUFF, Circuit Judge. The evidence in this case establishes, as I think, conclusively, (1) that, on the 18th of February, 1868, John P. Babcock, the bankrupt, was hopelessly insolvent; (2) that the defendant Morgan had reasonable cause to believe that Babcock was at that time insolvent; (3) that the sale by Babcock and the purchase by Morgan were made with intent to give to the latter a preference over other creditors. Although the instrument of transfer does not in terms so express, I am satisfied that the agreement, understanding and intent were that the purchase price, and the collections to be made from the accounts, &c., should be applied first to the payment of the judgments whereon executions had been levied on the goods, and next to the payment of the debts for which Morgan was liable as endorser. The sale of Babcock's entire stock of goods, &c., and the placing of his accounts and credits in Morgan's hands, including his entire property, he being a trader, (property exempt from execution only excepted,) was

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

so entirely out of the usual course of business, as to raise the presumption of fraud declared by the statute; and the evidence fails, in my judgment, to overcome that presumption.

Babcock was a trader. He was not only embarrassed, but was so entirely unable to meet his engagements, that judgments had been recovered against him, and his entire stock of goods,) which constituted nearly all of his property liable to execution,) was held by the sheriff under the levy of executions, and two or more of the notes endorsed by Morgan had been protested. This, Morgan knew. No reasonable man could, I think, then doubt Babcock's insolvency. Surely, this was reasonable cause for believing it. Indeed, the weight of the evidence inclines me not only to think that Morgan knew of this insolvency, but that the purchase and the taking of the notes and accounts for collection were for the distinct purpose, in his mind, of securing such control as would secure him against loss by his endorsements for Babcock. It follows, that the transaction is void; and Morgan is expressly excluded, in such case, from proving his debt as a claim against the estate of the bankrupt. The assignees, the plaintiffs herein, are entitled to recover back all the property which Morgan received; and, as to any part thereof which the latter has sold or appropriated to his own use, they are entitled to recover the value thereof, with interest from the time of the conversion or collection thereof, and its demand by the assignees.

If the transfer were set aside upon technical or other grounds entirely consistent with good faith in the transferee, and he appeared to have acted under an honest mistake, it might be proper to allow him the amount of the judgments which he paid in order to obtain the benefit of his purchase, and the amount which he collected from the accounts and paid over to his principal, which is testified to have been about three hundred dollars. Not so where the facts are as above found. He obtained the property by means which were a clear fraud upon the bankrupt act [of 1867 (14 Stat. 534)], and under circumstances which made it a fraud upon the other creditors, and presumptively he knew it; and the moneys which he collected from the accounts went directly to the performance of the understanding that they should be applied in discharge of his endorsements. I am aware that there is contradictory testimony, but I state my conclusions upon all the proofs. I do not think it necessary to discuss the evidence in detail. The defendant Morgan, himself a lawyer, and presumptively familiar with the law governing the subject of transfers of property by insolvents, and familiar, also, with the proper influence of facts and circumstances, as well as of direct testimony, in establishing the allegations of intent, cannot, I think, doubt the correctness of the conclusions I

have reached thereupon. Possibly, he may, under the strong influence of interest, have deceived himself into a belief that what was done and intended was consistent with the laws relating to the property of an insolvent. But, if I had concluded that preference to himself was not the immediate purpose of the transaction, I must still hold that it was a transfer in fraud of the bankrupt law, and set it aside on that ground, holding him liable to account. The bankrupt law, conceived and enacted in the belief that it provided the best mode of administering the estate of an insolvent, will tolerate no attempt by individuals to devise and carry into effect some other plan inconsistent therewith, nor permit such an attempt to be justified by the excuse that they thought such other plan wiser or better.

The defendant must, therefore, account for all the property received. He must deliver to the assignees all that remains in his possession. He must pay the market value of all that he cannot so deliver, with interest thereon from the time he sold or appropriated it to his own use, with this qualification, that interest will not be computed against him from a day earlier than the 29th day of June, 1868, when the assignees demanded the same from him; and, in like manner, he must pay the amount of his collections, with interest since such demand. A decree must be entered in conformity with these views, and referring it to a master to take the account, and superintend the delivery of the property, and report the amount due. On the coming in and confirmation of his report, a final decree will be entered for the plaintiffs, to recover such amount, with costs.