## Case No. 12,432.

### SCAMMON v. COLE et al.

[3 Cliff. 472;[1] 5 N. B. R. 257.]

Circuit Court, D. Maine. Sept. Term, 1871.

BANKRUPTCY—APPEALS—ILLEGAL PREFERENCE.

1. The United States bankrupt act now in force [14 Stat. 517] confers jurisdiction in equity upon the district courts in certain cases, and appeals may be taken from the district to the circuit courts in all such cases where the debt or damage claimed amounts to more than five hundred dollars, provided the appellant complies with the conditions specified in section 8 of the act.

[Cited in Flanders v. Abbey, Case No. 4,851.]

2. A mortgage given to secure the payment of two promissory notes, the consideration of which being pre-existing debts of the bankrupt, for almost all of which the mortgagees were liable either as sureties or indorsers, is void when it appears that it was made within four months next preceding the filing of the petition in bankruptcy, for the express purpose of giving a preference: that the mortgagors were insolvent and the mortgagees had reasonable cause to believe that the mortgagors were insolvent at the time of the execution of the mortgage, and that the conveyance was made in fraud of the provisions of said act.

[Cited in Giveen v. Smith, Case No. 5,467; Martin v. Toof, Id. 9,167; Toof v. Martin, 13 Wall. (80 U. S.) 47; Buchanan v. Smith, 16 Wall. (83 U. S.) 307, 308. Cited in brief in Walbrun v. Babbitt, Id. 581. Cited in Wager v. Hall, Id. 595; Scammon v. Hobson, Case No. 12,434; Sedgwick v. Sheffield, Id. 12,624; Michaels v. Post, 21 Wall. (88 U. S.) 398; Brooke v. McCraken, Case No. 1,932; Hamlin v. Pettibone, Id. 5,995; Bucknam v. Goss, Id. 2,097. Cited in brief in Napier v. Server, Id. 10,010. Cited in Dutcher v. Wright, 94 U. S. 557.]

Bill in equity [by John I. Scammon, assignee, against Thomas H. Cole and others] praying that the respondents might show cause why certain property and the proceeds thereof should not be adjudged to have been the property of certain bankrupts, Chadbourne and Nowell, at the time a petition in bankruptcy was filed against them in the dis-

trict court. On July 11, 1868, a creditor of the firm of Chadbourne and Nowell of Biddeford, in this district, filed in the office of the clerk of the district court a petition in bankruptcy against the firm, and on December 2d following they were adjudged bankrupts. Pursuant to the decree the appellee was appointed assignee of the estate of the bankrupts, and a conveyance of all their property was made to him as such assignee by the register in bankruptcy having charge of the case. It was alleged that the debtor on June 17th of the same year, and within four months before the filing of the said petition, being insolvent or in contemplation of insolvency, made a conveyance to the appellants of the personal property described in the bill of complaint, with a view to give to the grantees a preference as creditors of their firm, they, the said appellants, having reasonable cause to believe that the grantors were insolvent, and that such conveyance was made in fraud of the provisions of the bankrupt act. Possession by the appellants of the property conveyed, and demand of the same by the assignee, and their refusal to deliver the same, were also alleged by the complainant, and he prayed that the respondents might be summoned to appear and answer the complaint, and show cause, if any they had, why the property or the proceeds thereof should not be adjudged the property of the bankrupts at the time the said petition was filed, and that the same should be delivered to the complainant as such assignee. Service was duly made, and the respondents appeared and filed separate answers. They severally admitted that the bankrupts at the time alleged made a mortgage to them of the goods and chattels specified in the bill of complaint, but they alleged that it was given for a present consideration, and explicitly denied that the mortgagors, at the time the instrument was executed, had any knowledge that they or either of them were insolvent, and they also denied that the debtors gave the mortgage, or that they, the respondents, took the same with any view to give or to secure to them any preference as creditors of the bankrupts, or to prevent their property from being duly distributed under the bankrupt act. Proofs were taken in the district court, and the cause was heard, and a decree entered that the conveyance made by the bankrupts to the appellants was illegal, fraudulent, and void, and that the cause be referred to a master to take an account of the property received by the respondents. [Case No. 12,433.] Due report was made by the master, specifying the property received by the respondents under the mortgage, and the net proceeds of such portion of the same as they had sold and appropriated to their own use. Such of the property as remained in their possession they were required, by the final decree of the district court, to deliver to the complainant, and that he should also recover of them, for such

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

portion of the property as they had sold, the sum of $956.12, together with costs of suit. Appeal was duly taken by the respondents to this court, and the parties were fully heard upon the merits of the controversy. Certain exceptions were taken to the master's report, but were not pressed at the argument,· and need not therefore be noticed.

J. and E. M. Rand, for complainant.
A. A. Strout, for appellants.

After a review of the facts of the case, and certain references to the pleadings, both of which are to be found in the statement, THE COURT proceeded to say:

CLIFFORD, Circuit Justice. Jurisdiction is conferred upon the district courts in certain cases, by the act of congress establishing a uniform system of bankruptcy, and section 8 of the act provides that appeals may be taken from the district to the circuit courts in all such cases when the debt or damages claimed amount to more than $500, .provided the appeal is claimed within ten days after the entry of the decree, and the appellant complies with the other conditions specified in that section.

Preferences, as well as fraudulent conveyances, if made within four months before the filing of the petition by or against the bankrupt, are, under certain conditions, declared void by section 35 of the bankrupt act. Those conditions, so far as they are applicable to this case, are as follows: "That if any person, being insolvent, or in contemplation of insolvency, within four months before the filing of the petition by or against him, with a view to give a preference to any creditor or person having a claim against him, or who is under any liability for him, * * * makes any payment, pledge, assignment, transfer, or conveyance of any part of his property, either directly or indirectly, absolutely or conditionally, the person receiving such payment, pledge, assignment, transfer, or conveyance, or to be benefited thereby, * * * having reasonable cause to believe such person is insolvent, and that such * * * payment, pledge, assignment, or conveyance is made in fraud of the provisions of this act, the same shall be void, and the assignee may recover the property, or the value of it, from the person so receiving it, or so to be benefited."

Three things must appear in order that the transaction may fall within that provision and be affected by it, as alleged in the bill of complaint. (1) That the payment, pledge, assignment, transfer, or conveyance was made within four months before the filing of the petition by or against the bankrupt, and with a view to give a preference to some one of his creditors, or to a person having a claim against him, or who was under some liability on his account. (2) That the person making the payment, pledge, assignment, transfer, or conveyance was insolvent or in contemplation of insolvency at the time the preference was giv-

en or secured. (3) That the person receiving such payment, pledge, assignment, or conveyance, or to be benefited thereby, had reasonable cause to believe that the person making the same and giving or securing such preference, was insolvent, and that the payment, pledge, assignment, transfer, or conveyance was made in fraud of the provisions of the bankrupt act.

All these matters are fully alleged in the bill of complaint, but they are distinctly denied in the answers, so that the complainant takes the burden of proof in the first instance. Much discussion of the first requirement to maintain the bill of complaint·is unnecessary, as the record shows that the mortgage in question was made to give a preference to the mortgagees, and was executed by the bankrupts only twenty-five days before the petition in bankruptcy was filed in the district court. By the terms of the mortgage it appears that it was given to secure two promissory notes, signed by the mortgagors, of even date with the mortgage, one given to the first-named appellant for the sum of $1,272.50, and the other to the other appellant for the sum of $1,547.61, both payable on demand with interest. Both notes were given for pre-existing debts of the bankrupts, for all of which the appellants were liable, either as sureties or indorsers, except a small sum due to one of the mortgagees.

Prior to the decree in bankruptcy, the mortgagors were engaged in buying and selling furniture, and the proofs show that they were largely indebted, and that the mortgage covered all their personal property, except one horse, not subject to attachment by the laws of the state; and that the senior partner of the firm, as a part of the same transaction, mortgaged to the appellants all his real estate, to secure the payment of the same two notes. Neither the firm nor the other partner appears to have owned any real estate, so that the two mortgages covered all of their attachable property, whether belonging to the firm or to them as individuals.

Fraudulent preference is the gravamen of the charge, and the complainant, as the assignee of the estate of the bankrupts, prays that the respondents may be required to answer the complaint, that the mortgage of the personal property may be set aside, and that the property therein described may be adjudged the property of the bankrupts at the time the petition was filed.

Made as the mortgage was, within four months next preceding the filing of the petition in bankruptcy, and for the express purpose of giving a preference to the appellants as the creditors of the mortgagors, the first material allegation of the bill of complaint is established.

Were the mortgagors insolvent or in contemplation of insolvency at the time the mortgage was executed? is the next material inquiry arising in the case as presented in the pleadings. Beyond doubt they owed debts

greatly exceeding the value of all their property, and they mortgaged it all to the appellants to secure less than one third part of their indebtedness. Liberally estimated, their whole property did not exceed in value the sum of $6,700, and they had mortgaged it all, including their stock in trade, to secure the two notes described in the mortgage deed, giving the mortgagees of the personal property the right to enter and take possession of the same at any time whenever they should see fit. They owed not less than $11,000, as appears by the record, and it is not pretended that any portion of the same, other than what was adjusted between the parties to the mortgage and was included in those two notes, is secured in any manner. All sums due to the appellants, or for which they were liable as sureties or otherwise, on account of the mortgagors, were included in the mortgage, but no provision was made for the other creditors or for any portion of their indebtedness, except what is included in the mortgage; whether the mortgagors knew it or not, it is clear to a demonstration that they were actually insolvent at that time, and it would be difficult, if not impossible, in view of the proofs, to hold that they were ignorant of the fact, as they had several times been obliged to procure renewals and extensions, and some of their paper was still overdue, and the testimony of the first-named appellant shows that the senior member of the firm told him when the mortgage was given, or the day before, that they had notes in the bank which were overdue and others coming due which they desired to arrange, adding that the notes "bothered" them, as it took much time to attend to them when they ought to be at work. Viewed in the light of the proofs in the case, as more fully set forth in the record, it is so clearly shown that the mortgagors were insolvent at the time the mortgage was executed, that it does not seem necessary to pursue the inquiry.

Two inquiries of fact are involved in the third condition specified in the clause of the section under consideration: Whether the mortgagees had reasonable cause to believe that the mortgagors were insolvent at the time they executed the mortgage to the appellants. Whether they had reasonable cause, at that time, to believe that the mortgage was made in fraud of the provisions of the bankrupt act. Separate answers were filed by the respondents, and they respectively denied that at the time of the making of the mortgage they believed, or had any reasonable cause to believe, that the mortgagors were insolvent or "in contemplation of insolvency," as alleged in the bill of complaint.

Proof that the respondents had actual knowledge that the mortgagors were insolvent at that time is not required in order to maintain the bill of complaint, but the allegation in that behalf is sustained if it appears that the 'mortgagees had reasonable cause for such belief, as that is the language of the thirty-fifth section of the bankrupt act. Actual knowledge is not made the criterion of proof in this matter, nor is it necessary that it should appear that the respondents actually believed that the mortgagors were insolvent; but the true inquiry is, whether the appellants, as business men, acting with ordinary prudence, sagacity, and discretion, had reasonable cause to believe that the debtors were insolvent in view of all the facts and circumstances known to them at the time they received the transfer of the property. Coburn v. Proctor, 15 Gray, 38.

Such a party cannot be said to have reasonable cause to believe that his grantor or mortgagor is insolvent unless such was the fact, but if it appears that the party making the conveyance was actually insolvent, and that the means of knowledge upon the subject were at hand, and that such facts and circumstances were known to the party receiving the conveyance as clearly put the assignee, transferee, or grantee of the property upon inquiry, it would seem to be just to hold that the party receiving the assignment, transfer, or conveyance, even if he omitted to make inquiries, had reasonable cause to believe that his assignor or grantor was insolvent. Ordinary prudence is required of the purchaser in respect to the title of the seller, and if he fails to investigate when put upon inquiry, he is chargeable with all the knowledge it is reasonable to suppose he would have acquired if he had performed his duty. Hill v. Simpson, 7 Ves. 152; Kennedy v. Green, 3 Mylne & K. 722; Smith v. Low, 1 Atk. 489; 3 Sugd. Vend. 471; Jones v. Smith, 1 Hare, 43; Pringle v. Phillips, 5 Sandf. 157; Booth v. Barnum, 9 Conn. 286; Pitney v. Leonard, 1 Paige, 461; Carr v. Hilton [Case No. 2,437].

Constructive notice of the kind mentioned is held sufficient in many cases, upon the ground that when a party is about to perform an act by which he has reason to believe that the rights of a third person may be affected, an inquiry as to the facts is a moral duty, and diligence an act of justice. Whatever fairly puts a party upon inquiry is sufficient notice in equity where the means of knowledge are at hand, and if the party under such circumstances omits to inquire, and proceeds to receive the transfer or conveyance, he does so at his peril, as he is then chargeable with a knowledge of all the facts which, by a proper inquiry, he might have ascertained. Hawley v. Cramer, 4 Cow. 717; Williamson v. Brown, 20 Law Rep. 397.

Apply that rule to the proofs in the record, and it is too clear for argument that the finding of the district court under this issue was correct, as fully appears from the evidence to which reference has already been made in examining the preceding proposition. Sufficient information might easily have been obtained, as a large amount of the paper of the bankrupts was in the bank where one of the appellants was a director. Suppose, however,

that the rule of constructive notice is not applicable in the case, still it is quite obvious that the same conclusion must be reached, even if the proper rule of decision is the one ordinarily applicable in equity suits. Where the facts charged in the bill as the grounds of obtaining relief are clearly and positively denied in the answer, and are only supported by one witness, the rule is well settled in equity as administered in the federal courts, that the court will not decree in favor of the complainant. Union Bank v. Geary, 5 Pet. [30 U. S.] 111; Delano v. Winsor [Case No. 3,754]; Parker v. Phetteplace [Id. 10,746].

Such an answer is evidence in favor of the respondent, and unless it is disproved by something more than the testimony of one witness, it is conclusive. Clark's Ex'rs v. Van Riemsdyk, 9 Cranch [13 U. S.] 160; Hughes v. Blake, 6 Wheat. [19 U. S.] 468; Daniel v. Mitchell [Case No. 3,562].

Congress, however, may prescribe a different rule in such litigations, and congress has provided to the effect that if all the other conditions specified in the section concur, and it appears that the person who received the pledge, assignment, transfer, or conveyance had reasonable cause to believe that the person from whom he received it was insolvent, that the assignee of the bankrupt's estate, under those circumstances, may recover back the property or its value, as already more fully explained. 14 Stat. 534.

Different causes of action will doubtless require different forms of remedy, but the section under consideration contains no intimation that the rule of evidence is any more stringent in a suit in equity than in an action at law, but the language of the section applicable in all cases is to the effect that it must appear that the party making the pledge, assignment, transfer, or conveyance was insolvent at the time the same was made, and that the party receiving it had reasonable cause to believe that such was the fact. Actual knowledge of a given fact may be proved by circumstances, even in an ordinary equity suit, where, from the nature of the pleadings, the testimony of a single witness, without corroboration, would not be sufficient, and it is equally clear that circumstances may be sufficient to show that the transferee, mortgagee, or grantee of the property of an insolvent person had reasonable cause to believe that he was insolvent at the time the transfer, mortgage, or conveyance was made. Willing ignorance, as where a party wilfully shuts his eyes to the means of information which he knows are at hand, is regarded in many cases as equivalent to actual knowledge, and it is difficult to see why that rule should not be applied in the case before the court. May v. Chapman, 16 Mees. & W. 355; Goodman v. Simonds, 20 How. [61 U. S.] 343; The Lulu, 10 Wall. [77 U. S.] 202.

Concede, however, that by the true construction of the provision, the rule of constructive notice does not apply in such a case; that such an assignee, transferee, mortgagee, or grantee is not obliged to make any investigation; that the only proper inquiry in the case is whether the party receiving the transfer, mortgage, or conveyance, in view of the attending circumstances and of all the facts known to him concerning the business and pecuniary condition of the party making the transfer, mortgage, or conveyance, had reasonable cause to believe that the other party to the instrument of transfer, mortgage, or conveyance was insolvent at the time the same was made, still the same conclusion must follow, as it appears to the entire satisfaction of the circuit court that the appellants, as reasonable men, acting with ordinary prudence, sagacity, and discretion, "had good ground to believe" that the debtors were insolvent when they received the mortgage. Support to that conclusion is found in the testimony of the appellants as well as in that of the first-named mortgagor, and it is confirmed to the entire satisfaction of the court by the circumstances attending the execution of the mortgage.

Extended comments upon the evidence are unnecessary in this court, as the question was very fully examined in the opinion of the district judge, where all or nearly all of the material portions of the evidence are reproduced. Suffice it to say, the entire available means of the mortgagors did not exceed $6,700, and their debts, including the two notes secured by the mortgages, did not fall short of $11,000, showing beyond all doubt that they were deeply insolvent. Their paper, on which the appellants were liable to the amount of $1,250, was then overdue and unpaid, as is fully proved. Money which they had borrowed to a large amount was due to other parties, the payment of which might be demanded at any moment. Extensions had several times been granted to them, but the evidence shows that forbearance did not enable them to meet their liabilities, and it is doubtless true that these embarrassments prevented them at times from attending to their regular business. Recent extensions were obtained on liabilities where the appellants were not sureties, and the mortgagors owed other creditors whose demands were overdue and for which no provision was made.

Many of these facts were known to the appellants, or became known to them during the negotiations which preceded the transaction in question, and they also knew that all of their own claims and indebtedness were secured by the mortgage, and that the mortgagors had no other property to secure what they owed to their other creditors. Obviously, the effect of the transaction was to give ample security to the appellants and to withdraw from every other creditor of the mortgagors all means of securing their demands, except by attaching the mortgaged property. Evidence of intended preference is disclosed

in every feature of the transaction, and the circumstances, taken as a whole, are persuasive and convincing that the appellants had reasonable cause to believe that the mortgagors were actually insolvent.

Inquiries were made by the appellants, how much money the mortgagors desired to raise and what debts they proposed to pay or to secure, and the whole purpose of the applicants in desiring to mortgage their property was pretty fully explained. They also inquired how much they owed in Boston, and were told that the amount did not exceed $1500 or $2000, but the necessity or propriety of securing any other creditors than the appellants was not even made the subject of conversation. Sustained as the charge is by all the circumstances in the case, the conclusion of the court is that the allegations of the answer are disproved, and that the appellants did have reasonable cause of belief, as is alleged in the bill of complaint.

Suppose that is so, still the complainant is not entitled to an affirmance of the decree unless it also appears that the mortgage was made in fraud of the provisions of the bankrupt act, which is the only other disputed fact to be examined in the case. Before entering into any examination of the proofs exhibited in the record, it becomes necessary to inquire and determine whether the rule of evidence prescribed in section 35 of the bankrupt act applies to cases arising under the first clause of the section, or whether its application is confined exclusively to those arising under the second, which is the six months' clause, declaring certain sales, assignments, transfers, or other conveyances void if made within that period.

Whenever any person, being insolvent or in contemplation of insolvency within six months before the filing of the petition by or against him, makes any payment, sale, assignment, transfer, conveyance, or other disposition of any part of his property to any person who then has reasonable cause to believe him to be insolvent or to be acting in contemplation of insolvency, and that such payment, sale, assignment, or other conveyance is made with a view to prevent his property from coming to his assignee in bankruptcy, or to prevent the same from being distributed under the bankrupt act, or to defeat the object of, or in any way impair, hinder, impede, or delay the operation or effect of, or to evade any of the provisions of this act, the sale, assignment, transfer, or conveyance shall be void, and the provision is that "the assignee may recover the property or the value thereof, as assets of the bankrupt." Those two clauses are connected, the clause declaring certain sales, etc., void, if made within six months before the petition by or against the bankrupt was filed, following the clause forbidding preferences and ending with a period after the word "bankrupt." Then follows the provision to be construed which reads as follows: "And if such sale, assignment, transfer, or conveyance is not made in the usual and ordinary course of business of the debtor, the fact shall be prima facie evidence of fraud."

Argument to show that the transfer and conveyance in this case was not made in the usual and ordinary course of business of the debtors, is quite unnecessary, as the proofs show that they were retail dealers, and that they mortgaged all their property to the appellants, leaving more than two thirds of their indebtedness wholly unsecured, so that if that provision applies to the first clause of the section, the burden of proof is unquestionably shifted upon the respondents. Had the provision in question preceded the second clause, the argument that the second clause was unaffected by it would have been entitled to great weight, and if so, and it was intended to make it applicable to both, then it must follow the second or be repeated, which could hardly be expected, judging from the usual course of legislation. Connected together as the two clauses are in the same section, it seems reasonable to suppose that congress intended that the special rule of evidence prescribed should apply to cases arising under both, especially as every word of the provision except the word "sale" is as applicable to the first clause of the section as to the second, and even that is not entirely inapplicable to the case before the court, as the mortgage contains a stipulation that the mortgagees may enter whenever they see fit and take possession of the mortgaged property for their better security.

Both of these clauses were borrowed substantially from the insolvent law of Massachusetts, the first corresponding with section 89 of that law, and the second clause corresponding with section 91 of the same law. Gen. St. Mass. 593, 594. Separated, as the two enactments were in that law, by an intervening section, the argument that the special rule as to the burden of proof which is prescribed in section 91 applied only in cases arising under that section, was much stronger than in the case before the court, as the two clauses of the enactment in the bankrupt act are connected together and form a part of the same section; but the supreme court of that state held, notwithstanding that the two enactments were separated by an intervening section, that the provision in question applied to cases arising under section 89 as well as to those arising under section 91, which contains that provision. Nary v. Meerill, 8 Allen, 452; Metcalf v. Munson, 10 Allen, 491.

Apparently it was the fact that the two sections were separated by an intervening one which occasioned the "difficulty in construing" the provision, but no such embarrassment exists in the case before the court, as congress has eliminated that difficulty by uniting the two enactments in one section, and by re-enacting both since the decisions of the supreme court of that state were published, without employing a word to indicate

that the construction adopted by that court is not correct.

Assume that the special rule of evidence mentioned applies to cases arising under the first clause as well as to those arising under the second, then it follows that the circumstances attending the execution of the mortgage and the transfer of the property afford prima facie evidence that the transfer was made in fraud of the provisions of the bankrupt act. Attempt was made in argument to overcome that presumption, but it is sufficient to say that it was wholly unsuccessful.

Decree affirmed with costs.