### SWARTS v. SIEGEL et al.

### SIEGEL et al. v. SWARTS.

(Circuit Court of Appeals, Eighth Circuit. July 21, 1902.)

Nos. 1,696, 1,697.

1. PRINCIPAL AND SURETY—SUBROGATION—SURETY WHO PAYS ACQUIRES NO BETTER RIGHT THAN FORMER HOLDER OF CLAIM.

A surety who pays the debt of his principal is subrogated to the rights of the holder of the claim which he pays, but he takes it subject to its disqualifications and limitations. He acquires no higher or better rights than its prior holder.

2. BANKRUPTCY—INDORSER OR SURETY TAKING UP PREFERRED CLAIM — RETURN OF PREFERENCE.

An accommodation maker, indorser, or surety on the obligations of a bankrupt, who pays and takes them up after the principal debtor has given a preference to the original holder thereon, is debarred from an allowance of a claim against the estate of the bankrupt either for the amount owing by the bankrupt upon the obligations or for the amount that the surety paid to take them up until the amount paid to the original holder in preference is returned to the estate of the bankrupt.

8. SAME—INDORSER OR SURETY FOR BANKRUPT IS A CREDITOR.

An indorser, an accommodation maker, or a surety on the obligation of a bankrupt is a creditor under the act of 1898, and a payment on such an obligation by the principal debtor while insolvent to the innocent holder of the contract within four months before the filing of the petition for adjudication in bankruptcy will constitute a preference which will debar the indorser, accommodation maker, or surety from the allowance of any claim in his favor against the estate of the bankrupt unless the amount so paid is first returned to that estate.

4. CONSTRUCTION—UNEQUIVOCAL LANGUAGE NOT SUBJECT TO.

There is no safer or better settled canon of interpretation than that where language is clear and unambiguous it must be held to mean what it plainly expresses, and no room is left for construction.

(Syllabus by the Court.)

¶ 3. See Bankruptcy, vol. 6. Cent. Dig. §§ 265, 267.

Appeals from the District Court of the United States for the Eastern District of Missouri.

David Goldsmith, for Swarts.

Edward C. Eliot, for F. Siegel & Bro.

Before SANBORN and THAYER, Circuit Judges, and LOCHREN, District Judge.

SANBORN, Circuit Judge. These are appeals from the decree of the district court directing that the claim of F. Siegel & Bro. against the estate of the Siegel-Hillman Dry Goods Company, a corporation and a bankrupt, be disallowed unless the claimants repay to the trustee the sums of $14,600 and $5,219.63, which the court held to constitute preferences given to the claimants which they were required to surrender under section 57g of the bankrupt act of 1898. The claimants appealed from this decree because it required them to restore the $14,600 and the $5,219.63 as a condition of the allowance of their claim. The trustee appealed from it because it did not require the claimants to repay to him $20,000 more as a condition of the allowance of their claim.

1. The preference, amounting to $14,600, which the court required the claimants to repay, is the same preference, and results from the same payments, which the Fourth National Bank of St. Louis has been required to surrender as a condition of the allowance of its claim against the estate of this bankrupt in Swarts v. Fourth Nat. Bank, 117 Fed. 1, in which the opinion is filed herewith. Reference is made to the opinion in that case for a detailed statement of the facts out of which this preference arose, and for a discussion of the legal conclusions which determine the rights of the parties interested therein. They will not be repeated at length here. It will suffice to make a brief statement of the salient facts which constitute this preference and of the rules which determine its disposition, and to intimate the order which should be made in these cases.

Four months prior to February 6, 1900, when the dry goods company was adjudicated a bankrupt, the Fourth National Bank of St. Louis held the promissory notes of this corporation for $25,000 upon which the claimants, F. Siegel & Bro., had indorsed their names before the notes were discounted for the purpose of giving them credit, so that they became accommodation makers thereon. Within four months preceding the filing of the petition in bankruptcy, the dry goods company, while it was insolvent, paid to the bank $14,600 on some of these notes, and the bank innocently received these payments. On December 30, 1899, when the petition in bankruptcy was filed, the bank held a claim against the corporation for $10,600 and interest upon some of these notes which had been indorsed by the claimants, and for $35,000 upon other notes of the bankrupt which had not been so indorsed. After the adjudication in bankruptcy Siegel & Bro. paid $10,535.46, the amount which remained due upon some of these notes which they had indorsed, and one of the items of their claim against the estate of the bankrupt is the amount which they so paid. Their claim consists of various items aggregating about

$35,000. The court below directed the disallowance of their claim unless they refunded the $14,600 which the bank had received on the notes which Siegel & Bro. had indorsed.

The rights of creditors are fixed by the status of their claims when the petition in bankruptcy is filed. A creditor who has received a preference upon one claim against the estate of a bankrupt is thereby debarred from the allowance of any claim unless that preference is first surrendered. When the petition in bankruptcy in this case was filed the bank held a claim against the estate of the bankrupt for $10,400 and interest on some of the notes indorsed by Siegel & Bro., and that claim was disqualified for allowance unless the preference of $14,600, which the bank had received from the dry goods company, was surrendered. The disqualification of a claim for allowance created by a preference inheres in and follows every part of the claim, whether retained by the original creditor or transferred to another, until the preference is surrendered. The payment of the $10,400 and interest by Siegel & Bro., after the adjudication in bankruptcy, gave them no right to the allowance of the claim for this amount, based upon the notes which they took up, which the bank had not possessed before they made the payment. The claim was disqualified for allowance in the hands of Siegel & Bro. until the $14,600 was repaid to the same extent that it was so disqualified in the hands of the bank. "Whenever a creditor, whose claim against a bankrupt is secured by the individual undertaking of any person, fails to prove such claim, such person may do so in the creditor's name, and if he discharge such undertaking in whole or in part, he shall be subrogated to that extent to the rights of the creditor." Section 57i, Bankr. Act 1898.

Subrogation is the substitution of one person or thing for another. Here it is the substitution of one holder of a claim for another. But one who holds the rights or claims of another by subrogation takes them subject to the limitations and disqualifications attached to them in the hands of his predecessor. He has no higher or better rights than those which the first holder possessed. Houston v. Bank, 25 Ala. 250, 257, 258; Brandt, Sur. p. 462, § 316. As no claim of the bank against the estate of the bankrupt could be allowed until it repaid the $14,600 which it had received upon this claim based upon the notes indorsed by Siegel & Bro., so the latter have no claim against the bankrupt estate based upon these notes until the $14,600 is returned.

In order to avoid this inevitable conclusion, Siegel & Bro. have not founded their claim for the $10,400 and interest upon the indorsed notes, but they present it for $10,535.46 cash paid by them to take up the notes, and argue that they are not subject to the principle of subrogation, but that they are entitled to the allowance of their claim for this amount as for money had and received, regardless of the doctrine of subrogation, upon the ground that they have paid a debt of the bankrupt at his request. This payment, however, was not made until after the adjudication in bankruptcy. It was made upon a claim that was disqualified for allowance unless the holder of it first returned to the trustee $14,600. If the bankrupt had made a request

of his friends to pay this claim and they had complied with that request, after the adjudication in bankruptcy, these facts could not have transformed this demand from a claim for $10,400 and interest, which draws back into the estate $14,600 before it can be allowed, into a claim for the same amount which would be entitled to allowance without any repayment. The fact is, however, that the bankrupt never made any such request. The only request he ever made was made before the notes were discounted, and it was that Siegel & Bro. would sign them as accommodation makers. They did so, and thereby became liable to pay them. They have paid $10,535.46, and taken them up. Now, they either paid this sum voluntarily or they paid it in discharge of their liability as sureties on the notes. If they paid it voluntarily, they have no claim against the bankrupt or its estate for reimbursement. They were mere volunteers. If they paid it in discharge of their liability as sureties, they cannot escape the effect which the law invariably attaches to such a payment. They cannot escape the result that they have not paid the debt of the bankrupt. They have not discharged it from liability, but they have bought from its holder, the bank, the claim based upon these notes, which it held against the bankrupt, subject to all its limitations and disqualifications. They have been subrogated and limited to the rights of the bank in the collection and enforcement of the claim, and they have no legal demand to the reimbursement of the money they have paid except through the enforcement of the claim which they have purchased from the bank, because under the law they paid their money, not to relieve the bankrupt from liability, but to buy the claim of the bank against it. A surety who discharges his liability by the payment of his principal's debt does not thereby relieve the principal from liability to pay it, but he subrogates himself to the rights of the former owner of the claim and stands in his shoes. Morgan v. Wordell, 178 Mass. 350, 354, 59 N. E. 1037, 55 L. R. A. 33. In equity, and in bankruptcy, which is a branch of equity, names and forms are unimportant where the truth is evident. It is not material that the sureties here call their claim one for the money which they have paid instead of a claim for the amount which the bankrupt owes upon the notes. The fact is undisputed that they made their payment in discharge of their liability as sureties upon the notes. Given that fact, the law fixes their rights. They have no claim against the bankrupt or its estate for the money they paid. Their only claim is for the amount the bankrupt owes upon the notes, and they take this claim subject to its disqualification in the hands of its former holder, the bank. It cannot be allowed until the preference of $14,600, which the insolvent debtor gave upon it, has been restored to the trustee. An accommodation maker, indorser, or surety on the obligations of a bankrupt, who pays them and takes them up after the principal debtor has given a preference thereon to their original holder, cannot present an allowable claim against the estate of the bankrupt either for the amount owing by him upon the obligations or for the amount that the surety paid to take them up, unless the amount paid to give the preference is first returned to the estate of the bankrupt. Bartholow v. Bean, 18 Wall. 635, 641, 21 L. Ed. 866; In re Schmechel, 4 Am. Bankr. R. 719, 721, 104 Fed. 64; Landry v.

Andrews, 6 Am. Bankr. R. 281, 284, 48 Atl. 1036; In re Waterbury Furniture Co. (D. C.) 114 Fed. 255; In re Bingham (D. C.) 94 Fed. 796; Morgan v. Wordell, 178 Mass. 353, 354, 59 N. E. 1037, 55 L. R. A. 33.

There is another reason why Siegel & Bro. are not entitled to the allowance of their claim unless the $14,600 is repaid. It is that they were creditors of the dry goods company when that amount was paid to the bank. A creditor is "one who gives credit in business transactions." Cent. Dict. p. 1341, tit. "Creditor." Siegel & Bro. gave credit to the dry goods company in a business transaction. They signed its notes, became absolutely liable to pay them, and thereby gave it credit. If they had simply indorsed them, and thus become only contingently liable, the same result would have followed. One who loans his credit to another is as much his creditor as one who loans his money to him. A creditor is "one who has the right to require the fulfillment of an obligation or contract." Bouv. Law Dict. p. 435. An indorser, an accommodation maker, or a surety on an obligation of a debtor has a right to require the fulfillment of the obligation or contract of that debtor. " 'Creditor' shall include any one who owns a demand or claim provable in bankruptcy." Section 1, subd. 9, Bankr. Law 1898. "Debts of a bankrupt may be proved and allowed against his estate which are (1) a fixed liability * * * (4) founded upon an open account or upon a contract express or implied." Section 63. Provision is here made for the proof of two classes of debts,—those which evidence fixed liabilities of the debtor, and those founded upon contracts which evidence contingent or uncertain liabilities. The debt of a principal debtor to his indorser, his accommodation maker, or his surety before the latter has paid the obligation is a contingent liability founded upon contract, and falls directly within the terms and meaning of subdivision 4 of this section. To make assurance doubly sure, however, congress expressly provided that "whenever a creditor, whose claim against a bankrupt estate is secured by the individual undertaking of any person, fails to prove such claim, such person may do so in the creditor's name, and if he discharge such undertaking in whole or in part he shall be subrogated to that extent to the rights of the creditor." Section 57i. An indorser, an accommodation maker, or a surety on the obligation of a bankrupt is a person whose individual undertaking secures the claim against the bankrupt estate of the holder of that obligation, and by the terms of this section he may prove that claim whenever the creditor fails to do so. The language is broad, comprehensive, and without exception. He has the same right to prove it before as after he discharges the obligation in whole or in part, and if he is an indorser he has the same right to make his proof before as after his liability ceases to be contingent and becomes fixed. The last clause of the paragraph, "and if he discharge such undertaking in whole or in part he shall be subrogated to that extent to the rights of the creditor," neither limits the class who may prove their claims under this paragraph to those who have discharged their undertakings entirely or partly, nor in any way restricts the class which the earlier portion of the paragraph permits to establish their demands against the estate of the bankrupt. On the

other hand, it adds emphasis and certainty to the patent meaning of the earlier portion of the paragraph that the indorser or surety may prove the claim in the name of the holder of the bankrupt's obligation whenever the creditor fails to do so, and before, as well as after, the surety discharges his undertaking, because, while such proof in the name of the creditor would send the dividends to the original holder of the claim, the latter portion of the paragraph adds the provision that if the surety discharges his undertaking he shall then be subrogated to the rights of the original holder, and hence to the right to receive the dividends. Sections 57i and 63 (4) were obviously intended to prevent the injustice that would be inflicted upon indorsers and sureties for the bankrupt whenever the holders of their obligations should elect to make no proof of their claims against the bankrupt estates, and to rely exclusively upon the liabilities of the sureties if the latter were not allowed to prove the claims. These sections have accomplished their purpose. The remedy they provided is as broad and comprehensive as the evil which they were passed to prevent, and an indorser or a surety has a provable claim against the estate of a bankrupt, and is his creditor under the act of 1898 before, as well as after, his liability becomes fixed.

An indorser, an accommodation maker, or a surety on the obligation of a bankrupt is a creditor under the act of 1898, and a payment on such an obligation by the principal debtor while insolvent to the innocent holder of the contract within four months before the filing of the petition for adjudication in bankruptcy will constitute a preference which will debar the indorser, accommodation maker, or surety from the allowance of any claim in his favor against the estate of the bankrupt unless the amount so paid is first returned to that estate. Bankr. Act 1898 (30 Stat. 544) §§ 1 (9), 57i, 63a (1, 4); Landry v. Andrews, 6 Am. Bankr. R. 281, 284, 48 Atl. 1036; In re Rea, 82 Iowa, 231,239, 48 N. W. 78; Cutler v. Steele, 85 Mich. 627, 632, 48 N. W. 631; Dunnigan v. Stevens. 122 Ill. 396, 401, 404, 13 N. E. 651, 3 Am. St. Rep. 496; Ahl v. Thornor, 1 Fed. Cas. 220, 222 (No. 103); Sill v. Solberg (C. C.) 6 Fed. 468, 474, 477; Scammon v. Cole, 21 Fed. Cas. 627, 628 (No. 12,432); Cookingham v. Morgan, 6 Fed. Cas. 454, 455 (No. 3,183); In re Gerson (D. C.) 105 Fed. 891; Bartholow v. Bean, 18 Wall. 635, 21 L. Ed. 866; In re Waterbury Furniture Co. (D. C.) 114 Fed. 255.

This conclusion has not been reached without a careful comparison of the pertinent provisions of sections 38 and 39 of the bankrupt act of 1867 (14 Stat. 535, 536), and a thoughtful perusal of the opinions in Singer v. Sloan, Fed. Cas. No. 12,899; Thomas v. Woodbury, Fed. Cas. No. 13,916; Bean v. Laflin, Fed. Cas. No. 1,172; Corbett v. Woodward, Fed. Cas. No. 3,223; and Swarts v. Siegel (C. C.) 114 Fed. 1001. This portion of our labors, however, has been fruitless chiefly for the reason that the language of the act of 1898 upon this subject appears to us to be too plain for exegesis or interpretation. Attempted judicial construction of the unequivocal language of a statute or of a contract serves only to create doubt and to confuse the judgment. There is no safer or better settled canon of interpretation than that when language is clear and unambiguous it must be held to

mean what it plainly expresses, and no room is left for construction. Knox Co. v. Morton, 15 C. C. A. 671, 673, 68 Fed. 787, 789; Railway Co. v. Sage, 17 C. C. A. 558, 565, 71 Fed. 40, 47; U. S. v. Fisher, 2 Cranch, 358, 399, 2 L. Ed. 304; Railway Co. v. Phelps, 137 U. S. 528, 536, 11 Sup. Ct. 168, 34 L. Ed. 767.

The accepted and customary definition of the term "creditor," its definition in the act of 1898, the clear terms and patent meaning of the provisions of that act upon the subject under discussion, the better reasons and the greater weight of authority, all converge to establish and sustain the conclusion that an indorser, an accommodation maker, or a surety for a bankrupt is his creditor; and the result is that whether we are governed by the general definition of the term, or by the specific provisions of the statute, Siegel & Bro. held a provable claim against the estate of the dry goods company, and were its creditors when the $14,600 was paid to the bank; and as that payment depleted the estate, and its enforcement will enable Siegel & Bro. to obtain a larger percentage of their claim out of the estate of the bankrupt than other creditors of the same class will receive, their claim against the estate cannot be allowed unless the $14,600 is first returned to the trustee.

2. In all essential respects the facts which condition the alleged preference of $20,000 are the same as those which control the preference of $14,600, which has already been considered. Four months before the filing of the petition in bankruptcy the Corn Exchange Bank of New York held the promissory notes of the bankrupt for $37,500, upon which Siegel & Bro. had indorsed their names before the notes were discounted, to give them credit, so that they were in reality accommodation makers. Within four months before the filing of the petition the dry goods company, while insolvent, paid to this bank $20,000 upon some of these notes. These payments left two of the notes, one for $10,000 and one for $7,500, unpaid. After the adjudication in bankruptcy Siegel & Bro. paid and took up these notes. One of the items of their claim is for cash paid to the Corn Exchange Bank of New York to take up these two notes. The objection to their claim is that it was disqualified for allowance unless the $20,000, which was paid to the Corn Exchange Bank within four months of the filing of the petition in bankruptcy upon notes of the bankrupt of like character which had been indorsed by Siegel & Bro., is first returned to the trustee. On the day when the petition in bankruptcy was filed the Corn Exchange Bank held a claim against the estate of the bankrupt for $17,500. This claim was disqualified for allowance by the fact that this bank had received a preference of $20,000 within four months of the filing of the petition in bankruptcy. The subsequent payment by Siegel & Bro. of the $17,500 owing upon this claim and its transfer to them did not free it of this disqualification. It was no more allowable in their hands without the return of the $20,000 than it was in the possession of the bank. The court below should have disallowed the claim unless Siegel & Bro. first restored the $20,000 which had been paid upon it within four months of the filing of the petition in bankruptcy.

3. The alleged preference of $5,219.63 arises out of this state of

facts: On October 24, 1899, a broker or his customer held a promissory note for $5,219.63 made by the dry goods company, payable to the order of Siegel & Bro., and indorsed by them, which fell due on October 25, 1899. By agreement between the dry goods company and Siegel & Bro. this note was paid by the dry goods company in this way: On October 24, 1899, the corporation sent from St. Louis to Siegel & Bro. at Chicago its three checks,—one for $2,000, dated October 24, 1899; one for $1,619, dated October 28, 1899; and one for $1,600.63, dated November 1, 1899; and requested permission to draw upon Siegel & Bro. for $5,219.63 to pay the note. On October 25, 1899, the dry goods company drew a draft on Siegel & Bro. for the amount of the note, deposited it with a bank in St. Louis to its own credit, and paid the note with the proceeds of the draft. On the next day, October 26, 1899, the draft was paid by Siegel & Bro. at the Union National Bank in Chicago. On that day, October 26, 1899, the check for $2,000, dated October 24, 1899, was paid at the Fourth National Bank in St. Louis. On October 30, 1899, the check for $1,619 was paid at the same place, and on November 2, 1899, the third check, for $1,600.63, was paid in the same way and at the same bank. The referee and the court below both held that the effect of this transaction was to create an indebtedness from the dry goods company to Siegel & Bro. on October 25, 1899, when the draft was deposited and its proceeds applied to the note, which was subsequently discharged by the payment of the checks of the dry goods company on October 26th, October 30th, and November 2d, respectively. It is earnestly contended that the check for $2,000 was practically paid at the same time with the draft, and hence that its payment constituted no preference. The effect of the transaction, however, was that the dry goods company received the amount of this and all the other checks by means of its deposit of the draft in its bank at St. Louis one day before it paid its check for $2,000. From the time it received that money, on October 25th, until it paid its check, on October 26, 1899, it was indebted to Siegel & Bro. in the full amount of the draft. This indebtedness was subsequently discharged by the payment of the checks. There is no doubt that the payment of the two checks of the later dates gave a preference to Siegel & Bro. upon their claim for the money which they advanced upon the draft. The presumption is that the opinion of the referee and of the court below relative to the effect of the use of the check of earlier date is correct, and, while the question may be susceptible of some doubt, it is our opinion that there was no error in this conclusion.

The result is that the claim of F. Siegel & Bro. against the estate of the bankrupt cannot be lawfully allowed unless before its allowance the claimants pay to the trustee in bankruptcy $20,000 and $5,219.63, nor unless the sum of $14,600 is paid back to the trustee either by the Fourth National Bank of St. Louis or by Siegel & Bro. In the case of the Fourth National Bank this court has directed that the claim of the bank be disallowed unless, within a time to be fixed by the court below, that bank repays to the trustee this sum of $14,600, and that in case it repays this amount its claim be allowed for the entire $25,000 evidenced by the notes indorsed by Siegel & Bro. If the bank repays

this sum, the claim of Siegel & Bro. must be diminished by the sum of $10,535.46, which they claim to have paid upon their indorsed notes held by the Fourth National Bank. The orders should be so drawn that, in case the Fourth National Bank refuses to repay the $14,600, an opportunity may be given to Siegel & Bro. to prove their claim for this $10,535.46 as well as the balance of their claim, and to repay the $14,600 before their claim is disallowed. The decree which is challenged by these appeals is reversed, and the case is remanded to the court below, with directions to enter orders and take further proceedings herein not inconsistent with the views expressed in this opinion and in the opinion in the case of Swarts v. Fourth Nat. Bank, which is filed herewith.