BARTHOLOW <em>v.</em> BEAN.

A payment by an insolvent, which would otherwise be void as a preference under sections thirty-five and thirty-nine of the Bankrupt law, is not excepted out of the provisions of those sections because it was made to a holder of his note overdue, on which there was a solvent indorser whose liability was already fixed.

ERROR to the Circuit Court for the District of Missouri; the case, as found by the District Court, and on which the judgment to which the writ of error was taken had been entered below, being in substance thus:

Kintzing & Co. (a firm composed of one Kintzing and a certain Lindsley) were grocers in St. Louis, and kept a bank account with Bartholow & Co., bankers in the same city. On the 15th of January, 1869, these last discounted a note for $2500 of their customers, the said Kintzing & Co., indorsed by J. B. Wilcox, and maturing on the 15–18th of March, 1869.

On the 15th of February, 1869, Kintzing & Co. called a meeting of their creditors. These assembled and " most of them " signed a deed of composition, by which they agreed to take seventy cents on the dollar, in notes of Kintzing, payable in six, twelve, and eighteen months. But there was a provision in the deed that it should not be binding on

any creditors unless agreed to and signed by all. Some did not sign. Some who signed, took the composition notes [the amount so taken having been (apparently) $75,000].*

Among the few who did not sign were Bartholow & Co. They well knew, however, that an agreement such as above described had been entered into by the other creditors.

On the 27th of February, Kintzing & Co. dissolved their partnership, Lindsley retiring, and Kintzing taking all the assets and assuming all the debts of the firm.

Before the day when the note of Kintzing & Co. matured, Wilcox, he, as already said, being confessedly solvent, waived protest and notice; and the note remained unpaid till August 9th, on which day Kintzing, being then "hopelessly insolvent even under the terms of the agreement," paid it.

On the 18th of August, 1869, "the paper given by said Kintzing, pursuant to the terms of said compromise, to the amount of about $25,000, became due," and on the 17th of September a petition in bankruptcy was filed against him, on which he was decreed a bankrupt, and one Bean appointed his assignee in bankruptcy.

Bean brought this suit against Bartholow & Co., to recover the money which Kintzing had paid to the said bankers, in discharge of the note, alleging that he made the payment "with a view to give a preference to them." and in fraud of the provisions of the Bankrupt law.

The thirty-fifth and thirty-ninth sections of the Bankrupt law, which were relied on by the assignee as giving him the right in law to recover, are thus :†

"SECTION 35. If any person being insolvent, or in contemplation of insolvency, within four months before the filing of the

---

* The case as found by the District Court did not state what the debts of Kintzing & Co. were, nor what their assets, nor what proportion of creditors signed and took notes. But it stated that "on the 18th day of August, 1869, the paper given by the said Kintzing, *pursuant to the terms of the compromise,* to the amount of about $25,000 became due." This must have been the six months' paper, and, therefore, as the Reporter supposes, one-third of the whole of the compromise notes given.

† 14 Stat. at Large, 534, 536.

petition . . . against him, with a view to give a .preference to any creditor or person having a claim against him, or who is under any liability for him, . . . makes any payment, pledge, assignment, transfer or conveyance of any part of his property, either directly or indirectly, *the person receiving such payment, pledge, assignment, transfer or conveyance, or to be benefited thereby, having reasonable cause to believe such person is insolvent,* . . . *and that such* . . . *payment, pledge, assignment, or conveyance, is made in fraud of the provisions of this act,* the same shall be void, and the assignee may recover the property, or the value of it, from the person so receiving it, or so to be benefited. . . .

" And if any person being insolvent, or in contemplation of insolvency or bankruptcy, within six months before the filing of the petition . . . against him makes any payment, sale, assignment, transfer, conveyance, or other disposition of his property, to any person *who then has reasonc ole cause to believe him insolvent, or to be acting in contempla ion of insolvency, and that such payment, sale, assignment, transf r, conveyance, or other disposition, &c., is made with a view to pr vent his property from coming to his assignee in bankruptcy, or to prevent the same being distributed under this act, or to defeat the object of,* . . . *or to evade any of the provisions of this act,* the sale, assignment, transfer, or conveyance shall be void, and the assignee may recover the property, or the value thereof, as assets of the bankrupt.

." SECTION 39. Any person . . . who being bankrupt or insolvent, or in contemplation of bankruptcy or insolvency, shall make any payment, grant, sale, conveyance, or transfer of money, or other property or estate, . . . with intent to give a preference to one or more of his creditors, or to any person . . . who . . . is or may be liable for him as indorser . . . shall be adjudged a bankrupt on the petition of one or more of his creditors. . . . And . . . the assignee may recover back the money . . . so paid . . . *provided the person receiving such payment, or conveyance, had reasonable cause to believe that a fraud on this act was intended, or that the debtor was insolvent.*"

The court below, on the case found, gave judgment for the assignee.  Bartholow & Co. brought the case here.

*Mr. K. H. Spencer, for the plaintiffs in error:*

1. Bartholow & Co. were compelled to receive payment

when tendered, since if they had refused to receive payment the indorser, Wilcox, whose liability was contingent only on non-payment by Kintzing & Co., would have been discharged.

2. Bartholow & Co. had no notice of Kintzing's insolvency. The case, as found, is perhaps defective, in not showing more particularly than it does the condition of Kintzing & Co.'s affairs—the relative state of their debts and assets—when they called their creditors together.* But it is clear that it was considered that a release of 30 per cent. would set Kintzing up; and that creditors to the amount of more than $100,000 did not only sign off at the rate of 70 cents on the dollar, but did actually take composition notes; the notes that came due in August—six months from the date of the deed of composition—having as found been $25,000. To this extent, therefore,—a very large extent, it would seem, from the magnitude of the figures,—we may assume as matter of law, that Kintzing was released, notwithstanding the clause in the deed that the composition should not bind any creditor unless all agreed to it. The creditors who not only signed but took and kept the notes, in law waived that clause.† The case then is this: A trader having solid assets, finds himself embarrassed; he calls his creditors together and gets from " the most of them " a release of 30 per cent. of their claims, contingent on all signing. He expects to get the signatures of all. A large proportion not only sign but actually take notes, and so in law release him to the extent of 30 per cent. *After* this, he pays a person who had not released; one who being perfectly secured otherwise had no interest to look into or even to watch his affairs, and doubtless had not looked into or even watched them. Continuing insolvency after such a release is not so violently presumable as that every one dealing with the party afterwards must

* The counsel for the plaintiffs in error spoke in their brief of the debts being $179,000, and the assets $204,000. But there was no such fact found.

† Spottiswoode *v.* Stockdale, Montague on Composition, ed. 1823, Appendix, 125; 1 Cooper's Chancery Cases, 105; Ex parte Kilner, Buck, 104; Ex parte Lowe, 1 Glyn & Jameson, 81; Ex parte Shaw, 1 Maddock, 598.

be taken, as of course, to deal with him, with legal notice of it; that is to say, with " reasonable cause to believe " it; and if he has no such legal notice,—no " reasonable cause to believe " it,—he cannot have received the payment in fraud of the Bankrupt law. Indeed, in such a case, it is hard to believe that even the debtor can have made the payment with a view to give a preference. The only object which a debtor can have in compromising with creditors is to secure a safe position. Not only Bartholow & Co., but Kintzing himself, may have well believed that such a position had been obtained by Kintzing here; and the fact that the note had lain dishonored for several months is nothing against this view. Kintzing *had*, indeed, been embarrassed (perhaps insolvent), and unable to go on; but now, when he pays, he had by the release of even a portion of his creditors got on his feet. Why had he let the note lie so long? Because during that time he was embarrassed or insolvent. Why does he now pay it? Because his creditors to the amount of more than $100,000 had, in fact and in law, released 30 per cent. of their debts, and extended for six, twelve, and eighteen months the payment of the remaining 70 per cent., and he thinks he is not insolvent. The very fact of the *previous* delay shows on his own part his now supposed solvency; while as to Bartholow & Co., if they had not supposed him now solvent, why would they, as it of necessity is alleged that they did, in fraud of the Bankrupt Act, receive payment, and so incur the danger of a suit just such as the present, when all the while they had Wilcox liable to them, from whom they could have got payment without any danger whatever?

*Messrs. N. Myers and E. T. Allen, contra.*

Mr. Justice MILLER delivered the opinion of the court.

The plaintiffs in error were bankers in the city of St. Louis, with whom Kintzing & Co. kept a bank account, and they had discounted the note of Kintzing & Co. for $2500, dated July 15th, 1869, payable in sixty days, indorsed by J.

B. Wilcox. Before its maturity Wilcox, who was solvent, waived protest and notice, and the note remained unpaid until August 9th, when Kintzing paid the amount to plaintiffs in error. In the meantime Kintzing & Co. failed in business, and in February attempted a composition with their creditors at seventy cents on the dollar, in notes payable in six, twelve, and eighteen months. The plaintiffs in error did not sign this agreement, though they knew of it, and that effort seems to have failed. It must be conceded that Kintzing was utterly insolvent when he paid the note, and this must have been known to plaintiffs in error. A petition in bankruptcy was filed against Kintzing within less than four months after the payment of the note, and Bean, the defendant in error, having been appointed assignee, brought the present suit to recover the money so paid, as being a preference of a creditor forbidden by the Bankrupt law.

If it were a transaction solely between Kintzing and the bankers there seems to be no reason to doubt that the payment was such a preference as would enable the assignee to recover it back. But the case is not a little embarrassed by the fact that the indorser, Wilcox, was solvent, and was liable on the note to the bankers, and the question arises whether, under such circumstances, they were at liberty to refuse to receive payment of the principal without losing their claim upon the indorser, who was probably a mere accommodation surety. It is a question not without difficulty.

It is very true that an ingenious argument is made to show that by an arrangement between Kintzing and his partner the former assumed all the debts under the attempted compromise, and took all the property of the former, and that, by reason of the partial success of the compromise, Kintzing was no longer insolvent. But the facts in the finding of the court leave no room to doubt that Kintzing was, after the failure, always insolvent, in the sense of being unable to pay his current overdue debts, and of this plaintiffs could not be unaware, since they held the note, on

which they received the money now sued for, about five months after its maturity, without payment, and without their signing the compromise paper. They must, therefore, have known that, in the sense of the Bankrupt law, Kintzing had been insolvent for months before they received payment.

Does the fact that Wilcox, the indorser, was solvent, and was liable, change the rule as to payment as a preference?

The statute in express terms forbids such preference, not only to an ordinary creditor of the bankrupt, but to any person who is under any liability for him; and it not only forbids payment, but it forbids any transfer or pledge of property as security to indemnify such persons. It is, therefore, very evident that the statute did nòt intend to place an indorser or other surety in any better position in this regard than the principal creditor, and that if the payment in the case before us had been made to the indorser, it would have been recoverable by the assignee. If the indorser had paid the note, as he was legally bound to do, when it fell due, or at any time afterwards, and then received the amount of the bankrupt, it could certainly have been recovered of him. Or if the money had been paid to him directly instead of the holder of the note it could have been recovered, or if the money or other property had been placed in his hand to meet the note or to secure him instead of paying it to the bankers, he would have been liable. He would not, therefore, have been placed in any worse position than he already occupied if the holders of the note had refused to receive the money of the bankrupt. It is very obvious that the statute intended, in pursuit of its policy of equal distribution, to exclude both the holder of the note and the surety or indorser from the right to receive payment from the insolvent bankrupt. It is forbidden. It is called a fraud upon the statute in one place and an evasion of it in another. It was made by the statute equally the duty of the holder of the note and of the indorser to refuse to receive such a payment.

Under these circumstances, whatever might have been

the right of the indorser, in the absence of the Bankrupt law, to set up a tender by the debtor and a refusal of the note-holder to receive payment, as a defence to a suit against him as indorser, no court of law or equity could sustain such a defence, while that law furnishes the paramount rule of conduct for all the parties to the transaction; and when in obeying the mandates of that law the indorser is placed in no worse position than he was before, while by receiving the money the holder of the note makes himself liable to a judgment for the amount in favor of the bankrupt's assignee, and loses his right to recover, either of the indorser or of the bankrupt's estate.

We are of opinion, therefore, notwithstanding the hardship of the case, which is more apparent than real, that the payment must be held to be a preference within the Bankrupt law, and that the judgment of the court below, that the assignee should recover it, must be

AFFIRMED.