SILL, Assignee, etc., *v.* SOLBERG.

*(Circuit Court, W. D. Wisconsin. April 5, 1881.)*

1. EQUITABLE RELIEF—FRAUDULENT PREFERENCE—CONTINGENT LIABILITY—INDORSER.

The fraudulent appropriation of the assets of a bankrupt to the payment of a note before maturity, at the request and for the benefit of the indorser, is a proper subject for equitable relief in a bill to charge the indorser.

2. SAME—SCOPE OF REMEDY.

Where there are such grounds for equitable relief as to part of the substantial matters set out in the bill, equity will take cognizance of the whole.

3. FRAUDULENT PREFERENCE—REV. ST. § 5128.

Such appropriation for the benefit of the indorsee constitutes a preference within the meaning of section 5128 of the Revised Statutes.—[ED.

In Equity. Demurrer.

*S. U. Pinney,* in support of demurrer

*C. W. Bunn, contra.*

DYER, D. J. This is a demurrer to a bill in equity brought by the complainant as assignee of Wilson & Kiene, bankrupts. The bill sets out the following state of facts: On and prior to the twenty-ninth day of August, 1878, Wilson & Kiene, as copartners under that firm name, were and had been doing business in La Crosse as retail dealers in pork, hams, lard, etc. On that day they were adjudicated bankrupts, and the complainant was subsequently appointed assignee. On the twenty-eighth day of August, 1878, the bankrupts were indebted to the La Crosse National Bank in the sum of $5,000, as the makers of a promissory note, dated May 30, 1878, payable to the order of the bank, and due August 31, 1878, and on which the defendant, Solberg, was indorser. The bankrupts were also at that time largely indebted to various other persons, and had not sufficient property to pay their indebtedness, nor did they have bankable assets with which to pay their note held by the bank, of which fact the defendant had knowledge. This being their condition on the day last mentioned, August 28th, Wilson, acting for the firm, but without the knowledge or consent of his partner, sold and delivered to the defendant their entire stock in trade, alleged to be then worth $3,000, and in payment therefor took the defendant's note for $2,464.14. The defendant was at the same time indebted to the bankrupts in the sum of $1,333.16 on open account, and for this amount he then gave to the firm his note. On that day the bankrupts had in hand $494.30 in cash, and also held notes against various persons, amounting in all to $792.81, all of which he indorsed except one note, which, without indorsement, was bankable paper. The bankrupts, or one of them, at the request of the defendant, then took the two notes so made by him, also the notes against third parties which he had indorsed, and the cash which they had in hand, to the bank, and took up their $5,000 note, upon which the defendant was contingently liable as indorser.

It is alleged that this payment was made for the purpose

of releasing the defendant from his liability on the $5,000 note, and for his benefit, and it is further averred that all the acts before recited were done in pursuance of a fraudulent combination and arrangement between the defendant and one of the bankrupts to give the defendant a preference over the general creditors of the firm.   Suitable allegations are also made of the insolvency of the bankrupts at the time of these transactions, and that the defendant had reasonable cause to believe that they were then insolvent, and knew that the transfers and payments were made in fraud of the bankrupt law; and the prayer of the bill is that the sale and transfer of the stock of merchandise to the defendant, and the payment and transfer of the assets before mentioned to the bank, for his benefit, be declared void and set aside, as between the complainant and defendant, and that he be deprived of all benefit arising to him therefrom.   Also that he be charged with the value of the assets so transferred and paid for his use and benefit, and be decreed to repay the same; that an account be taken of the value of the merchandise; that the defendant be charged with the excess of such value over what he paid therefor, and that he be decreed to pay the same to complainant.

The bill is demurred to on two grounds: (1) That complainant's remedy is at law; (2) that upon the allegations of the bill the complainant is not entitled to the relief he seeks.

1. It is contended by counsel for the defendant that this bill is in substance a declaration, in case that no discovery is sought, that no such account is needed as involves the exercise of equity jurisdiction, and that, in short, the bill contains no allegations disclosing a necessity for resorting to a court of equity.   It is provided by statute of the United States (section 723, Rev. St.) that "suits in equity shall not be sustained in either of the courts of the United States in any case where a plain, adequate, and complete remedy may be had at law."   This is merely declaratory of the pre-existing rule. *Parker* v. *Cotton & Wool Co.* 2 Black, 545.   Many authorities were cited by counsel on the argument in support of and

against the proposition that the present bill shows no grounds for recourse to equity. In the cases cited in support of the demurrer, the question of the right to equitable relief arose in various forms, and from them all this summarized statement of the law may be deduced: that whenever a court of law is competent to take cognizance of a right, and has power to proceed to a judgment which affords a plain, adequate, and complete remedy, without the aid of a court of equity, the plaintiff must proceed at law, because the defendant has a constitutional right to a trial by jury. *Hipp* v. *Babin*, 19 How. 278.

The case most nearly parallel to this, cited in support of the demurrer, is *Garrison* v. *Markley*, 7 N. B. R. 246, which was a bill to recover the value of a stock of goods alleged to have been transferred by the bankrupts to the defendant, a creditor, with a view to give him a .preference, in fraud of the bankrupt law, and in which it was held that the remedy at law was plain and adequate, and jurisdiction in equity was therefore declined. That case, it is to be observed, involved only the recovery of the value of property which the creditor had directly received from the bankrupt. That was all there was of it, and therefore trover was a suitable and complete remedy. The present bill, as we shall see, discloses some features not present in *Garrison* v. *Markley*.

In many of the cases referred to by counsel for the complainant the question of equitable jurisdiction was not directly raised, and was therefore only impliedly decided. In some of these cases, and in others where the question arose for distinct adjudication, it was sought to set aside conveyances of land, or mortgages on personal property, or transfers of securities, and none of them are directly in point as parallel cases to the present; though it would seem that *Flanders* v. *Abbey*, 6 Biss. 16, is a case which, if it is to be regarded as authoritative in its full extent, would support jurisdiction in equity, even upon such a state of facts as existed in *Garrison* v. *Markley, supra*.

*Cady* v. *Whaling*, 7 Biss. 430, was a bill to reach property transferred by the bankrupt to his wife, and involved the

avoidance of a voidable legal title in the wife. A part of the property in controversy consisted of policies of life insurance, and the peculiar features of the case, when taken together, were such as to make it quite apparent that a recourse to equity was the only effective remedy.

None of the cases cited on either side disclose such similarity to the case made by the present bill as to make them applicable, except as they enunciate general principles. This demurrer must, therefore, be decided by applying the general rules or principles relating to equity jurisdiction to the facts alleged in the bill. If equity declines to take cognizance of this case, it is because the remedy at law is plain, adequate, and complete. Such remedy must be plain, for if it be doubtful and obscure at law, equity will assert a jurisdiction. It must be adequate, for if at law it falls short of what the party is entitled to, that founds a jurisdiction in equity. And it must be complete; that is, it must attain the full end and justice of the case. 1 Story, Eq. Juris. § 33. If the transaction in question was attended by or has given rise to circumstances on account of which a judgment at law will fall short of doing full and complete justice between the parties, or on account of which there is difficulty in reaching the full merits of the case under the rules of law, or where there is even a reasonable doubt as to the remedy at law being plain, adequate, and complete, equity will always take and retain jurisdiction. *Garrison* v. *Markley, supra.* To these general rules may be added another, which is that if there are grounds for equitable relief as to part of the substantial matters set out in the bill, equity will take cognizance of the whole.

If the entire subject-matter of the suit consisted of the sale and transfer to the defendant of the bankrupt's stock of merchandise, the remedy at law would undoubtedly be adequate and complete; for the goods were delivered directly to the defendant. They came to his hands, and were converted by him, and trover would lie for their value. In such case it would not do to say that, because fraud was involved, the jurisdiction of a court of equity might be invoked concurrently with that of a court of law. That rule is subject to excep-

tions, and, in view of the exceptions, Judge Story, in speaking of cases involving fraud, states the rule in this language: "It may, therefore, be said that the concurrent jurisdiction of equity extends to all cases of legal rights where, under the circumstances, there is not a *plain, adequate,* and *complete* remedy at law." So, also, it may be that, as to the debt for $1,333.16 due from the defendant to the bankrupts, and for which he gave them his note, an action at law would lie to recover the amount of that debt as if no note were given, and as if the debt remained unpaid. Indeed, it seems quite clear that, if the note was given and used to enable the defendant to secure protection against his liability on the note held by the bank, and thereby to get a forbidden preference, an action at law to recover the original debt owing by him to the bankrupts would be an ample remedy, if the transaction makes him liable in any form of action. But, according to the bill, the alleged fraudulent purchase of the stock, and the giving of the note for $1,333.16, do not constitute the entire subject-matter of the action. It is charged, as we have seen, that certain moneys of the bankrupts, and certain promissory notes held by them against third parties, were also applied on the bank indebtedness, for which the defendant was contingently liable; and it is alleged that the appropriation of these assets was made in pursuance of a scheme entered into between the defendant and the bankrupts. This means that it was arranged between those parties that the assets of the bankrupts should be exclusively applied in payment of the one debt owing to the bank, instead of applying them *pro rata* upon all the liabilities of the firm; and the bill seeks to charge the defendant with the moneys and assets thus used, because of his alleged participation in the transaction. Is there not shown in this phase of the case grounds for equitable relief, if the defendant is chargeable in any proceeding whatever? The question, I think, must be answered in the affirmative; for it is not perceived how the defendant could be made answerable in an action at law for the alleged fraudulent appropriation of the moneys which the bankrupts had in hand, and the notes which they held against third parties. Those moneys did

not come to the hands of the defendant, and so he would not be liable for them in an action for money had and received. Nor were the notes last mentioned converted by him in such manner as to enable the complainant to enforce liability in an action of trover. These moneys and notes remained all the time in the hands of the bankrupts until they were delivered to the bank to be applied in payment of the $5,000 note; and, if personal responsibility for them can be fastened upon the defendant at all, it is because the appropriation of them to the payment of the bank indebtedness was made to protect him against a contingent liability, and was therefore for his benefit, and because he was a party to the transaction. The methods pursued to accomplish the object in view, according to the averments of the bill, were circuitous, and any liability of the defendant arising from the use made of the moneys and notes referred to is one springing from the application of equitable principles to the transaction, and only enforceable in equity. As the defendant derived the benefit he sought by indirect and circuitous means, and not by personal appropriation or conversion of the property, the transaction can only be unravelled by a court of equity, which may, if a case is made upon the proofs, charge him in equity with the value of these moneys and notes; and this is one of the results sought to be attained by the bill. Since, therefore, under the rule before stated, equity has jurisdiction as to part of the subject-matter of the bill, it may take cognizance of the whole. The first ground of demurrer must be held untenable.

2. It is insisted, however, that the bill makes no case for relief in law or equity, and the grounds urged in support of this point are that the use made of the assets of the bankrupts was not a payment to the defendant, nor to his use, as he had not been charged with a fixed liability on the note held by the bank, and owed no one on account of the note; that the action should have been brought, if at all, against the bank, as the party receiving the payment and realizing the sole legal benefit thereof, and if the bank received the money innocently, then there was no unlawful preference. I think this view of the case made by the bill is unsound. The stat-

ute, (section 5128, Rev. St.,) though it does not specifically name indorsers, is broad in its terms and meaning. It provides that "if any person, being insolvent, * * * within four months before the filing of the petition by or against him, with a view to give a preference to any creditor or person * * * *who is under any liability for him,* * * * makes any payment, * * * transfer, or conveyance of any part of his property, *either directly or indirectly,* * * * the person receiving such payment, * * * transfer, or conveyance, *or to be benefited thereby,* having reasonable cause," etc.

This language manifests an intent to prevent any evasion by indirect payments or dispositions of property. It is true that the defendant's liability on the note to the bank had not been fixed; but within the meaning of the law he was under a liability for the bankrupts. He had assumed the liability of an indorser, which was contingent at the time, and which might or might not become absolute. It was such a liability as would have supported a security passing from the makers of the note to the indorser to indemnify him against loss. The transaction, as it is set out in the bill, amounted to a scheme between the bankrupts and the defendant, whereby, in anticipation of the maturity of the note, and for the purpose of protecting the indorser against absolute liability and ultimate payment, it was arranged that through the intervention and co-operation of all the parties the assets of the bankrupts should be appropriated to the payment of the note and consequent benefit of the indorser. True, the payment was not directly to the indorser, but in equity it was equivalent to that, if the facts are as stated in the bill, and equity will look through the transaction and see if it is within the spirit and meaning of the law, if not its letter. If the defendant had taken directly the securities and assets of the bankrupts for the purpose of applying them in payment of the note held by the bank, and had so applied them, and if the other required conditions had existed as alleged in the bill, there could be no question that it would have been within the inhibition of the statute. As the case is stated in the bill, has the defend-

ant not done what, in the consideration of a court of equity, is equivalent to that? He was under a liability for the bankrupts, and payment was so made as to relieve him from that liability, and thereby benefit him; and it is not to be overlooked,—for this is a vital element of the bill,—that this was done in pursuance of a scheme or fraudulent device between the bankrupts and the defendant which enured to the benefit of the latter at the expense of other creditors. Thereby he as effectually secured a preference as if the assets had been paid to him directly, and he had then personally appropriated them to the payment of the note.

In *Bartholow* v. *Bean*, 18 Wall. 635, the question was whether a payment by an insolvent, which would otherwise be void as a preference, was not excepted out of the provisions of the law, because it was made to a holder of his note, overdue, on which there was a solvent indorser whose liability was fixed; and it was held that it was not. Justice Miller, in the opinion, says that "the statute in express terms forbids such preference, not only to an ordinary creditor of the bankrupt, but to any person who is under any liability for him. * * * It is therefore very evident that the statute did not intend to place an indorser or other surety in any better position in this regard than the principal creditor; and that if the payment in the case before us had been made to the indorser, it would have been recoverable by the assignee. If the indorser had paid the note, as he was legally bound to do when it fell due, or at any time afterwards, and then received the amount of the bankrupt, it could certainly have been recovered of him; or if the money had been paid to him directly, instead of the holder of the note, it could have been recovered; or if the money or other property had been placed in his hand to meet the note, or to secure him instead of paying it to the bankers, he would have been liable." This language is plainly expressive of the view that if, in advance of his liability being fixed, an indorser takes the bankrupt's property to meet the note which he has indorsed, when it shall mature, or to secure himself against loss, he will be liable as accepting a preference. And it would seem that if

this is done by indirect and evasive methods, the result in equity must be the same as if direct means were resorted to.

In *Bean* v. *Laflin*, 5 N. B. R. 333, it was held that an indorser of a note who receives none of the proceeds of the same, and whose contingent liability never becomes absolute, cannot be compelled to pay to the bankrupt's assignee the amount of the note paid by the bankrupt to the holder. But in this case the maker of the note paid it at maturity without calling on the indorser or surety, and was then carrying on his business, and so continued for a considerable time thereafter; and, moreover, the surety was not a participant in any scheme for the appropriation of the bankrupt's property to save himself from ultimate obligation to pay the note. It may be added, further, that some of the doctrine of the opinion in this case is quite irreconcilable with principles laid down in *Bartholow* v. *Bean, supra.* As bearing upon the question under consideration, and as tending to sustain the views which have been expressed, the cases of *Ahl* v. *Thorner*, 3 N. B. R. 118, and *Cookinham* v. *Morgan*, 5 N. B. R. 16, are not without force.

I think the bill should be answered. Demurrer overruled.