## SWARTS v. SIEGEL et al.

(Circuit Court, E. D. Missouri, E. D. May 3, 1902.)

### No. 4,426.

1. BANKRUPTS—WHO ARE CREDITORS—ACCOMMODATION MAKERS OF NOTES—PREFERENCES.

Bankr. Act, § 60a, provides that "a person shall be deemed to have given a preference if, being insolvent, he has * * * made a transfer of any of his property and the effect of the enforcement of such * * * transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors." *Held*, that an accommodation maker on a note executed by a bankrupt was not in any sense a creditor of the bankrupt, where he had not been called on to pay the note, or any part thereof, and could not be deemed to have received a preference merely because the bankrupt had, within four months of the adjudication, paid the amount of the note to the payee.

2. SAME—PREFERENCES—RECOVERY BACK—PERSONS LIABLE.

Bankr. Act, § 60b, providing that "if a bankrupt shall have given a preference within four months before the filing of the petition * * *

and the person receiving it or to be benefited thereby, **or** his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person," does not authorize the recovery from an accommodation maker on a note executed by the bankrupt of a payment made thereon by the bankrupt of his own accord, and not at the instigation or with the knowledge of such accommodation maker, though the payment was made within four months of the adjudication.

Sale & Sale, for plaintiff.
Stewart, Cunningham & Eliot, for defendants.

ADAMS, District Judge. This is a demurrer to a complaint in an action at law instituted by the plaintiff, as trustee of the estate of Siegel-Hillman Dry Goods Company, in bankruptcy, against Ferdinand Siegel and Joseph Siegel. The demurrer is addressed to the second and third counts of the complaint, but, as all the legal questions raised can be determined by consideration of one of them, attention will be confined to the demurrer to the second count. The count charges, in substance, that the bankrupt corporation was indebted to the Corn Exchange Bank of New York upon divers notes, aggregating the sum of $20,000; that these notes were signed by the bankrupt and by the defendants as co-makers, and, so signed, were delivered to the Corn Exchange Bank in settlement of the indebtedness of the bankrupt corporation; that the defendants were mere accommodation makers for the bankrupt; that, within four months before filing of a petition in bankruptcy against the corporation, it, while insolvent, paid the Corn Exchange Bank the amount due on the notes. There is no allegation that the bank knew of the insolvency of its debtor at the time it received the money, or that it had any cause to believe that it was intended by such payment to give any preference, within the meaning of the bankruptcy act. Neither is there any allegation showing that the defendants had any participation in, or knowledge of, the payments, as and when they were made to the bank. There is, however, an allegation that the bankrupt, at the time of making the payments to the bank, intended that the same should operate as a preference to the defendants. The legal conclusion is then pleaded that the payments so made were made for the benefit of the defendants, and operated to give them a preference, and were so intended by the bankrupt, and that the defendants at the time of receiving such preference had reasonable cause to believe that by such payments to the bank it was intended to give them a preference, within the meaning of section 60b of the bankruptcy act. This suit was accordingly brought to recover from the defendants the amount so paid by the bankrupt to the Corn Exchange Bank.

Stripped of verbiage, the question presented, as I understand it, is whether the payment by an insolvent debtor, within four months of bankruptcy, of notes on which the debtor is liable as principal, entitled the trustee of his estate in bankruptcy to recover the amount of payments so made to the creditor, from an accommodation maker of the notes, who was jointly liable to the creditor for their pay-

ment, but who neither participated in, nor knew of, the payment when made to the creditor, on the sole ground that the necessary result of such payment was to relieve the accommodation maker from his obligation to pay the same.

Section 60a of the bankruptcy act defines a preference thus:

"A person shall be deemed to have given a preference if, being insolvent, he has * * * made a transfer of any of his property and the effect of the enforcement of such * * * transfer will be to enable any one of his creditors to obtain a greater percentage of · his debt than any other of such creditors of the same class."

The important and essential element of a preference is that a creditor of the bankrupt must have obtained a greater percentage of his debt than any other of such creditors.

Subdivision "b" of section 60 provides for recovering preferences from the persons who have received them. It is as follows:

"If a bankrupt shall have given a preference within four months before the filing of the petition * * * and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person."

It is not contended in this case that the person actually receiving the preference, or his agent acting therein, is liable for the same; but it is contended that the persons "benefited thereby," namely, the accommodation makers, have received a preference, and are therefore liable to restore the same to the trustee in bankruptcy. I am unable to agree with plaintiff's counsel in their contention that the accommodation maker of a note, before he is called upon to pay the same, is in any sense a creditor of the principal debtor, within the meaning of the bankruptcy act, until he has paid the obligation, or some part of it, for which he has become surety for the debtor. He has no claim or demand against the principal in the note, and certainly he has none provable in bankruptcy. This, I think, is the necessary meaning of section 57, subd. "i," of the bankruptcy act. It is as follows:

"Whenever a creditor whose claim against a bankrupt estate is secured by the individual undertaking of any person, fails to prove such claim, such person may do so in the creditor's name, and if he discharge such undertaking in whole or in part, he shall be subrogated to that extent to the rights of the creditor."

In other words, an accommodation maker must discharge the undertaking, in whole or in part, before he can be subrogated to the rights of the creditor. Until he discharges such undertaking in whole or in part, the principal debtor owes him nothing; and he cannot, within the purview of the bankruptcy act, occupy the attitude or assert any rights of a creditor against the estate of the bankrupt. If such is the case, he clearly ought not to be subjected to the obligations imposed upon creditors, as such, in other provisions of the act.

From the foregoing legislative construction, as well as from common learning with respect to the nature of the contract and obliga-

tion of a surety, I conclude that no liability can rest against these defendants on the ground that they, as creditors of the bankrupt corporation, have received a preference from the corporation.

The foregoing conclusion might dispose of the demurrer under consideration, as the theory of the complaint undoubtedly is that the defendants occupied such a position with respect to the bankrupt that they, as creditors of the bankrupt, had received a preference, within the meaning of section 60, supra, by reason of the payment made to the Corn Exchange Bank But the argument took wider scope, and was based largely upon the following proposition: That a transfer of property to "any one" of the creditors might be recovered back, not alone from the creditor who received the transfer, but from any other person who might have been incidentally "benefited thereby." This contention necessarily requires a construction to be placed upon the language employed in section 60, subd. "b." As I understand the provisions of the bankruptcy act (section 60a, supra), it is only a creditor of the bankrupt who may receive any preference. The act, in all its provisions, clearly contemplates this. Section 60a, in defining what a preference is, in substance says that it must enable one creditor to get a greater percentage of his debt than any other creditor of the same class. Section 57, subd. "g," dealing with the same subject, provides as follows: "The claims of creditors who have received preferences shall not be allowed," etc. Section 60, subd. "c," in language, provides "that if a creditor has been preferred, and afterwards in good faith gives the debtor further credit," etc. All of these sections, taken together, to my mind clearly indicate that congress intended to limit the class of persons to whom preferences might be made to creditors of a bankrupt only. Section 60, subd. "b," neither changes the elements of a preference as defined by subd. "a," nor does it enlarge the class which may be preferred. It simply provides for the recovery of the preferential payments from a person who may have been preferred, and is predicated upon the existence of a preference as defined in the preceding subdivision. It superadds, however, as a condition to the right of recovery, knowledge, or, rather, reasonable cause to believe, on the part of the recipient of a preference, that the payment to him was intended by the bankrupt to be such a preference. The language relied upon by plaintiff's counsel as enlarging the class of recipients of preferences so as to include accommodation makers or indorsers of the bankrupt's paper, before legal liability is fixed against them, is as follows:

"If a bankrupt shall have given a preference [as defined in subdivision "a"], and the person receiving it or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person."

The language thus employed does not in terms purport to enlarge the class which might be the recipients of unlawful preferences. That matter is fixed and determined in the preceding section. "If * * * the person receiving it or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe," etc. This language

seems to have been employed for the purpose of subjecting any creditor, who may have received or been benefited by a preference, to liability for return of preferential payments,—not if he who actually or manually received it alone had knowledge that a preference was intended, but if he or any one else acting for him had such knowledge. The words underscored above, instead of enlarging the class of recipients of unlawful preferences, seem to have been inserted, ex industria, to bind any creditor who may have received such preference to any knowledge which his agents had of the bankrupt's intention, and were intended to impute that knowledge to the benefited creditor himself. The final words of the section, which provide for recovering the amount of the preferential payment from "such person," obviously refer to such person as might, under the law, have received a preference, and who either actually received it, or was benefited thereby, namely, a creditor of the bankrupt.

The foregoing, in my opinion, presents a correct analysis, and shows the true meaning of the sections of the law in question. To hold that an accommodation maker of the commercial paper of a bankrupt, against whom no liability was fixed, and who was at the time of the institution of the proceedings in bankruptcy in no manner a creditor of the bankrupt, and who never became such, was so incidentally benefited by the payment of the notes by the principal debtor, with which he had nothing to do, and which he could not prevent, as to subject him to liability to the trustee because of such payment, would, in my opinion, be an unwarranted perversion of the provisions of the bankruptcy act. It would eliminate all those carefully inserted provisions qualifying and defining what is a preference within the meaning of the act, and would work a palpable injustice. The conclusion thus reached is, in my opinion, fortified by a consideration of the provisions of the bankruptcy act of 1867, and adjudications thereunder. Section 35 of that act provides as follows:

"If any person being insolvent, or in contemplation of insolvency, within four months before the filing of the petition by or against him, with a view to give a preference to any creditor or person having a claim against him, or who is under any liability for him, * * * makes any payment, pledge, assignment, transfer, or conveyance of any part of his property, either directly or indirectly, absolutely or conditionally,—the person receiving such payment, pledge, assignment, transfer, or conveyance, or to be benefited thereby, * * * having reasonable cause to believe such person is insolvent, and that * * * payment, pledge, assignment or conveyance is made in fraud of the provisions of this act,—the same shall be void, and the assignee may recover the property, or the value of it, from the person so receiving it, or so to be benefited."

Section 39 of the act of 1867 is, in part, as follows:

"If any person who being bankrupt or insolvent, or in contemplation of bankruptcy or insolvency, shall make any payment, gift, grant, sale, conveyance or transfer of money, or other property, estate, rights or credits, or give any warrant to confess judgment, or procure or suffer his property to be taken on legal process, with intent to give a preference to one or more of his creditors, or to any person or persons who are, or may be liable for him as indorsers, bail, sureties, or otherwise, or with the intent by such disposition of his property, to defeat or delay the operation of this act," shall be deemed to have committed an act of bankruptcy, "and if such person shall be adjudged a bankrupt, the assignee may recover back the money or other

property so paid, conveyed, sold, assigned, or transferred contrary to this act: provided the person receiving such payment or conveyance had reasonable cause to believe that a fraud on this act was intended and that the debtor was insolvent."

Without analyzing the foregoing provisions of the act of 1867, it is at once observed that their scope with respect to preferences is much broader than is found in the act of 1898. The class who might have received a preference is not, in terms, limited to creditors, but specifically comprehends any person who is under any liability for the bankrupt. Any payment or transfer of money or property by an insolvent with the intent to give a preference to his creditors, or "to any person or persons who are or may be liable for him as indorsers, bail, sureties or otherwise," or with intent "to defeat or delay the operation of the act," was by section 39 made an act of bankruptcy, and, by the same section, entitled the assignee to recover the amount thereof. The particular features to which I wish to attract attention are those which contemplate, in direct and positive terms, the contingency of preferences being given to persons under any liability for the bankrupt, or to persons liable for him as indorsers, bail, sureties, or otherwise, and also to that provision permitting recovery from the persons receiving preferences when the same were made in fraud of the provisions of the act. There were certain adjudications under the act of 1867 holding, in substance and effect, that, even under the broad and comprehensive provisions of that act, recovery could not be had against an indorser or surety under facts and circumstances similar to those involved in the present case. In the case of Thomas v. Woodbury, Fed. Cas. No. 13,916, it was held by the United States district court of Maine (Fox, J.), that the payee and indorser of a note paid by the insolvent maker to the holder, in the usual course of business, within four months of bankruptcy of the maker, was not chargeable with taking or receiving a preference, where the indorser neither received the money, nor actually procured, suggested, or aided its payment, even though he knew the maker was insolvent. To the same effect, also, is the case of Singer v. Sloan, Fed. Cas. No. 12,899, decided by this court (Treat, J.). So far as I am aware, in all the cases decided by the district courts under the act of 1867, in which an indorser was held liable to restore money to the assignee in bankruptcy, it was because he had actively procured the payment to be made, or actively participated in the receipt of the money or property from the bankrupt's estate in such a way and manner as to constitute a fraud upon the provisions of the bankruptcy act. Such is the effect of the following cases: Ahl v. Thorner, Fed. Cas. No. 103; Sill v. Solberg (C. C.) 6 Fed. 468; Scammon v. Cole, Fed. Cas. No. 12,432; Id., 12,433; Cookingham v. Morgan, Fed. Cas. No. 3,183. Accordingly I think it may be safely said that even though the cases relied upon by plaintiff's counsel might have been authority for holding an indorser or surety to liability under the act of 1867, whereby a transfer to any person under liability for the bankrupt, as indorser, bail, surety, or otherwise, in known fraud of the act, might be recovered from the person receiving it or to be benefited by it, they afford no

authority for recovery against such person under the present bankruptcy act, which contains no provision in terms avoiding the preference to the person under liability for the bankrupt, such as indorser or surety, and which contains no provision for recovery of money paid in known fraud of the act. Moreover, I am persuaded that congress, by eliminating the provisions just referred to from the present act, and doing so with full knowledge of all the provisions of the act of 1867, manifested a clear intention not to subject indorsers or sureties to the liability now sought to be enforced against them under the facts of the present case. The present bankruptcy act, as is well known, was distinctly a compromise measure. For a long time before its enactment, congress had under consideration bills and amendments relating to bankruptcy legislation. They had for years received critical consideration in congress, and after much discussion there, and much general public debate, the present act became a law. Its provisions in relation to preferences, and the right of recovery of the same from a creditor only, must be treated, in the light of the former more drastic act, and in the light of the facts just alluded to, as the deliberate expression of the legislative will; and accordingly no interpretation should be put upon the same which would impute uncertainty to the legislative mind on this subject, and certainly no interpretation ought to be indulged which would embody in the present act any of the provisions of the act of 1867 industriously omitted by congress.

The foregoing observations are made with special reference to the case in hand, wherein it appears that the defendants, as sureties for the bankrupt, had no knowledge of, or participation in, the payment of the debt by the bankrupt to the creditor, and are not intended to express any opinion upon a question which might arise in case the surety had officiously interfered to procure the payment of the debt in order to secure his own immunity. Such facts might or might not create a liability against him on grounds unnecessary now to be discussed.

Attention is called by counsel for plaintiff to the case of Bartholow v. Bean, 18 Wall. 635, 21 L. Ed. 866, and it is claimed that that case is controlling of the one now before the court. A careful consideration of it, however, convinces me that it has no applicability. The point in judgment in that case was whether the fact that a creditor who received payment of his debt at a time and under circumstances constituting a preference, within the meaning of sections 35 and 39 of the act of 1867, could escape liability therefor on the sole ground that there was an indorser on his paper, against whom liability was fixed. It was contended by the defendant that he was compelled to receive payment when tendered by the principal debtor, or lose recourse over against the indorser, and for that reason that he was not liable to return the preference to the assignee in bankruptcy. The suit against Bartholow was based on the charge that he had received a preference, and had received money in fraud of the bankruptcy act. The court held that a refusal of payment by the creditor under such circumstances would not have discharged the indorser,

and that was the only question in judgment. In the opinion, however, the court took occasion to say:

"The statute, in express terms, forbids such preference, not only to an ordinary creditor of the bankrupt, but to any person who is under any liability for him; and it not only forbids payment, but it forbids any transfer or pledge of property as security to indemnify such persons. It is, therefore, very evident that the statute did not intend to place an indorser or other surety in any better position in this regard than the principal creditor, and that, if the payment in the case before us had been made to the indorser, it would have been recoverable by the assignee."

So far, it seems to me, the court based its observation upon that peculiar provision of the act of 1867 forbidding preferences to any person who is under any liability for the debtor; but the court goes on as follows:

"If the indorser had paid the note, as he was legally bound to do, when it fell due, or at any time afterwards, and then received the amount of the bankrupt, it could certainly have been recovered of him."

Such is undoubtedly true both under the old law and the present law, because, under such circumstances as are disclosed in the case, the indorser would have been the creditor of the bankrupt. The court then goes on as follows:

"Or if the money had been paid to him directly, instead of the holder of the note, it could have been recovered, or if the money or other property had been placed in his hand to meet the note, or to secure him, instead of paying it to the bankers, he would have been liable."

In the last-mentioned observation the court, in its hypothesis, makes the indorser an active participant in securing the payment of the debt in order to relieve him from liability; and accordingly, under the provision of the act of 1867, he was liable, because he was a person under liability for the bankrupt, who had received a preference by receiving an amount of money sufficient to exonerate him from liability. I fail to find in this decision anything whatever which disturbs the conclusion hereinbefore reached in the present case. The court there was dealing with a case under a different statute, invoking a different provision from the one now found in the present bankruptcy act, and, in its hypothetical cases, assuming a state of active participation by the indorser, resulting in a direct pecuniary benefit to him. The conclusion reached by the supreme court of Rhode Island in the recent case of Landry v. Andrews, 6 Am. Bankr. R. 281, 48 Atl. 1036, relied upon by plaintiff's counsel, was not the result of any independent reasoning by that court, but was based upon what it, in my opinion, improperly interpreted Bartholow v. Bean, supra, to teach, and therefore has no persuasive influence.

For the reasons hereinbefore given, the demurrer to the second and third counts of the petition must be sustained.