## In re GEORGE M. HILL CO.

### (Circuit Court of Appeals, Seventh Circuit. April 12, 1904.)

### No. 1,024.

1. BANKRUPTCY—PREFERENTIAL TRANSFER OF PROPERTY—DEPOSIT IN BANK.

The deposit of money in bank by an insolvent within four months prior to his bankruptcy, on open account, subject to check, does not constitute a transfer of property amounting to a preference, under Bankr. Act July 1, 1898, c. 541, § 60a, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445], although the bank may be at the time a creditor, and under section 68a the bank has the right to set off so much of its claims as equals the balance in such account.

2. SAME—PAYMENT OF NOTES TO INDORSEE.

The payment to a bank by an insolvent, within four months prior to bankruptcy, of notes given to third persons, but which have been indorsed to and are owned by the bank, constitutes a preference given to the bank, under Bankr. Act July 1, 1898, c. 541, § 60a, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445], which it must surrender under section 57g before proving a claim against the estate.

3. SAME—PAYMENTS AND NEW CREDITS—NET RESULT OF TRANSACTIONS.

A corporation previous to its bankruptcy had borrowed large sums from a bank, giving its notes therefor, and had also obtained a discount of customers' notes, which it indorsed. The bank had also discounted notes given by the corporation to third persons. Such transactions continued during the four months prior to bankruptcy, the corporation being in fact insolvent, but the bank having no knowledge or notice of such fact. The net result of the transactions during such time was to decrease the corporation's direct indebtedness on its own notes, both those given direct to the bank and those given to third persons, by the excess of payments over new notes given, but to increase its contingent indebtedness on indorsements of customers' notes. *Held*, that the latter should not be considered in determining the amount of preferences received by the bank which must be surrendered under Bankr. Act July 1, 1898, c. 541, § 57g, 30 Stat. 560 [U. S. Comp. St. 1901, p. 3443], as a condition to its proving a claim against the estate, since the discounting of the customers' notes which were the bankrupt's property did not increase its estate, but that the excess of payments over new credits on both the other items of direct indebtedness, taken together, constituted a preference, which must be surrendered.

Appeal from the District Court of the United States for the Northern District of Illinois.

See 123 Fed. 866, 59 C. C. A. 354.

Orville Peckham, for appellant.
Horace Kent Tenney, for appellee.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

JENKINS, Circuit Judge. The First National Bank of Chicago, the appellant here, filed in the bankruptcy court its amended claim against the estate of the bankrupt.

The indebtedness to the appellant is not in dispute. The contest below, as here, had reference to certain payments made by the bankrupt within four months prior to the filing of the petition in bankruptcy. On June 4, 1903, the referee made an order which upon petition for review he certified to the court below, wherein he found, first, that there was due to the bank from the bankrupt upon notes executed by it payable to the bank, and upon its indorsements of notes of third persons, held by the bankrupt, the sum of $55,644.45; second, that the bankrupt for four months prior to the filing of the petition in bankruptcy was wholly insolvent and not possessed of property sufficient to pay its debts; third, that within the period of four months the bank received from the bankrupt the sum of $3,700.93, which was paid and received with knowledge by the bank of the fact of insolvency, and that such payment was a preference which the trustee was entitled to recover from the bank; fourth, that within the stated period the bankrupt paid to the bank the further sum of $77,005.53, which was received without knowledge of the bankrupt's insolvency, which payment constituted a preference which the bank was bound to pay to the trustee as a condition of proving its claim against the estate. It was thereupon ordered that the claim of the bank be disallowed, unless the bank should within 10 days pay to the trustee the amount of $80,706.46, and if such sum should be paid the claim of the bank should be allowed at the sum of $136,350.91. On the 22d of July, 1903, upon the hearing, the court below approved and confirmed the findings and judgment of the referee, which decree the bank brings here for review.

The bankrupt, a corporation engaged in the book business in the city of Chicago, and against whom a petition in bankruptcy was filed on March 6, 1902, had been for a long time a customer of the First National Bank, maintaining a deposit account with it, and was a constant and large borrower of money from it. The bank was ignorant of the insolvency of the bankrupt until March 4, 1902, two days before the filing of the petition in bankruptcy. In its dealings with the bankrupt the bank kept a "loan account" and a "deposit account." The loan account included direct loans, being discount to the bankrupt of its notes (herein designated as direct indebtedness), and notes of customers of the bankrupt received from, indorsed by, and discounted for it (herein called contingent indebtedness). During the same period the bank discounted for others of its customers

notes of the George M. Hill Company to a large amount, indorsed by such other customers. Such discounts, however, did not appear in the loan account of the bankrupt kept by the bank, but in the loan account of the customers for whom the discounts were made. On November 6th, the commencement of the period of four months immediately preceding the filing of the petition in bankruptcy, the loan account stood as follows:

Direct indebtedness ............................................ $30,000 00
Contingent indebtedness ....................................... 39,700 00

$69,700 00

On March 6, 1902, the date of the filing of the petition in bankruptcy, the loan account exhibited as follows:

Direct indebtedness ............................................ $23,500 00
Contingent indebtedness ....................................... 51,829 86

$75,329 86

There was in fact $20,000 in addition paid during the stated period, but with the money of the bank loaned for that purpose. The loans were for like amounts, and were contemporaneous with the payments, and are treated by the referee as renewals and not considered as payments. The amount actually paid by the bankrupt upon its direct indebtedness during the stated period of four months was $17,-500. The last payment, $2,500, was made January 7, 1902, and reduced the direct indebtedness at that date to $15,000, at which sum it remained until February 11th, when $5,000 was added, and on March 1st $3,500 more was loaned, making the total direct indebtedness, at the date of filing the petition in bankruptcy, $23,500.

On the second day before the filing of the petition in bankruptcy, and after knowledge of the insolvency of the George M. Hill Company, the bank appropriated the balance in the deposit account standing to the credit of the company, to wit, $3,700.93, and applied it upon the direct indebtedness in the loan account.

During the stated period of four months the bankrupt paid to the bank on its promissory notes discounted by the bank for third parties, and owned by the bank, the sum of $59,505.53. These payments do not appear upon the loan account of the bank with the George M. Hill Company, but in the loan account kept by the bank with the customers for whom the discount of the notes was made. The sums thus received by the bank within the stated period of four months were these:

On loan account ............................................... $17,500 00
In payment of bankrupt's notes discounted by the bank for third
    parties ................................................... 59,505 53
Appropriated balance .......................................... 3,700 93

$80,706 46

These accounts the referee held to be preferences, the appropriated balance to be repaid to the trustee, because received with knowledge of insolvency, and the others to be repaid as a condition of the allowance of the bank's claim.

The contention here is with respect to the ruling upon each of these sums.

First. With respect to the appropriated balance of $3,700.93, it was ruled below that because the appropriation of that amount was with knowledge of the insolvency of the George M. Hill Company it was a transfer of property amounting to a preference, under section 60a of the bankruptcy act of July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]. It is sufficient to say that the precise question has recently been ruled to the contrary by the Supreme Court, in New York County National Bank v. Massey, 192 U. S. 138, 24 Sup. Ct. 199, 48 L. Ed. 380. In this respect, therefore, the referee and the court were in error.

Second. It is insisted by the appellant that payment by the bankrupt of notes given by it to third parties and discounted by the bank were, under the law, preferential payments to those for whom the bank discounted the notes, and were not preferential payments to the bank. We are not able to concur in this contention. The fact that the bank did not enter these notes in its loan account with the bankrupt, but in the account with the parties for whom they were discounted, is of no moment. The real question is, what was the true nature of the transaction? Was payment under the law preferential to the bank receiving payment? The title of the bank to these notes was absolute. The debt thereby evidenced was a debt owing by the bankrupt to the bank. True, the original payees of the notes were liable to the bank upon their indorsements of the notes, contingent upon their dishonor by the maker and upon due notice of such dishonor. True that, in the absence of a bankruptcy law, payment of the notes by the maker would inure to the benefit of the indorsers, relieving them from such contingent liability. True, also, that the debt of the bankrupt expressed by the notes would become a debt to the indorsers if and when, in discharge of their liability as indorsers, they should repossess themselves of the notes. But it was the bank, not the indorsers, who received the preferential payment. The release of the indorsers from contingent liability, if such release was effected by such payment, was an incident not affecting the penalty imposed by the bankruptcy act for the receipt, however innocent, of a preferential payment. Within the definitions of the bankruptcy act the indorser has been held to be a creditor of the bankrupt, while his liability as an indorser is contingent, so as to charge him with preferential payment made to the holder of the note. Swarts v. Siegel, 117 Fed. 13, 54 C. C. A. 399. But none the less is the owner of the note likewise subjected to the penalties of the act for receipt of such preferential payment. Swarts v. Fourth National Bank of St. Louis, 117 Fed. 1, 54 C. C. A. 387. In these cases both the bank and the indorsers were held chargeable for receipt of preferential payment by reason of the amount paid to the bank, which payment must be refunded before either party could prove an independent claim against the bankrupt with which the other party was in no wise connected. This would not result, as counsel supposed, that in such case the insolvent estate would recover twice what it

lost. Only the amount by which the assets of the estate had been depleted must be returned.

It is further said that the bank, refusing to receive payment of the notes, would thereby discharge the indorser. The contention is not free from difficulty, and if that result would follow the enforcement of the act would be productive of injustice. But we think the matter has been ruled by the Supreme Court in Bartholow v. Bean, 18 Wall. 635, 21 L. Ed. 866, a case arising under the former bankruptcy act (Act March 2, 1867, c. 176, 14 Stat. 534, 536). The question was presented in that case, and Mr. Justice Miller, delivering the opinion of the court, said:

"It is very obvious that the statute intended, in pursuit of its policy of equal distribution, to exclude both the holder of the note and the surety or indorser from the right to receive payment from the insolvent bankrupt. It is forbidden. It is called a fraud upon the statute in one place and an evasion of it in another. It was made by the statute equally the duty of the holder of the note and of the indorser to refuse to receive such a payment. Under these circumstances, whatever might have been the right of the indorser, in the absence of the bankrupt law, to set up a tender by the debtor and a refusal of the note holder to receive payment, as a defense to a suit against him as indorser, no court of law or equity could sustain such a defense, while that law furnishes the paramount rule of conduct for all parties to the transaction; and when in obeying the mandates of that law the indorser is placed in no worse position than he was before, while by receiving the money the holder of the note makes himself liable to a judgment for the amount in favor of the bankrupt's assignee, and loses his right to recover, either of the indorser or of the bankrupt's estate."

Within the rule in Pirie v. Chicago Title & Trust Company, 182 U. S. 438, 21 Sup. Ct. 906, 45 L. Ed. 1171, and In re Fort Wayne Electric Corp., 99 Fed. 400, 39 C. C. A. 582, we have no doubt that the amount of these notes thus paid should be refunded as a condition that the bank prove its other claim. The payment of the several notes was the payment of a debt within the stated period, which inured to the detriment of the bankrupt's estate, disturbing the equality of the statute and forbidden by the statute.

Third. In Jaquith v. Alden, 189 U. S. 78, 23 Sup. Ct. 649, 47 L. Ed. 717, it was ruled that payments on a running account, in the usual course of business, by a person whose property has actually become insufficient to pay debts, where new sales succeeded payments, and the net result was to increase his estate, and the seller had no knowledge or notice of the insolvency, and no reason to believe an intention to prefer, are not preferences which must be surrendered as a condition to the allowance of a proof of claim under the bankruptcy act. It is insisted by the appellant that under this rule it was improper to require the repayment of the sum of $17,500 paid during the stated period upon the direct indebtedness. It is to be observed that this account with the bankrupt kept by the bank does not include the notes of the bankrupt discounted by the bank for the respective payees of those notes, and which, as we have said in the preceding paragraph, was the debt of the bankrupt to the bank, and upon which was paid the sum of $59,505.53 during the stated period. We think that in stating the accounts between the parties, within the rule declared in Jaquith v. Alden, all the transactions be-

tween the parties must be included, and that we are not limited to an account as it is stated or was kept by the bank, because we are to inquire whether the net result of the transaction was to increase or decrease the estate of the bankrupt. If the account was stated including that amount, there remains no question that the net result of the dealings was to decrease the bankrupt's estate, and that the bank is therefore chargeable with the amount of that net decrease as a condition of proving its claim. Treating the account, however, as it is stated by the bank, there appears, during the stated period, to have been a decrease of direct indebtedness of $6,500, and an increase of contingent indebtedness of $12,129.18, showing an apparent net increase of indebtedness of $5,629.18. The inquiry presents itself whether the contingent indebtedness is properly included in that account. That contingent indebtedness was the contingent liability of the bankrupt upon notes of its customers discounted by the bank upon its indorsement of those notes and the proceeds paid to the bankrupt. This created no increase of the bankrupt's estate, for these notes were assets of the bankrupt, which by the transaction it had simply converted into money. Its liability upon these notes to the bank was contingent upon dishonor of the notes and due notice of such dishonor, and the bank's claim thereon might be proven as a contingent claim. The amount of liability could only be determined at the maturity of the notes. At the time of the bankruptcy the amount of these notes was $51,829.86, upon which there was paid by makers of them, at or before the hearing by the referee, the sum of $4,433.19. Whether and to what extent the bankrupt's estate should be charged could only be determined when the contingent liability had become an absolute liability. But, since the test is not whether the bank was damaged by it, or the indebtedness to it increased, but whether the bankrupt's estate was increased, and as the discount of these notes did not increase the bankrupt's estate, but operated merely to convert existing assets into cash, we do not think that this contingent liability should be permitted, in stating the account, to work an increase of benefit to the estate.

The referee and the court below allowed, as a preferential payment, the sum of $17,500 upon the direct indebtedness during the stated period, upon the postulate that there was a decrease of that direct indebtedness during the stated period of $6,500. These payments were made on or prior to January 7, 1902, reducing the direct indebtedness at that date to $15,000; but by discounts obtained February 11th of $5,000, and March 1st of $3,500, the direct indebtedness was increased from $15,000 on January 7th to $23,500 at the date of filing the petition in bankruptcy. The actual decrease of indebtedness between the 6th day of November, 1901, and the 6th day of March, 1902, was $6,500, and yet the court below has charged as a preferential payment the total payments made upon this direct indebtedness of $17,500, ignoring the subsequent discount by the bank during the stated period, and by which the estate was increased. The court below, nevertheless, ignored the payment of $20,000 because the payments were made by renewal notes, and the estate, with respect to increase or decrease of assets, was unaffected thereby. By

the bankruptcy statute, section 57g (30 Stat. 560 [U. S. Comp. St. 1901, p. 3443]), the claims of creditors who have received preferences shall not be allowed unless such creditors shall surrender their preferences; and under the rule in Jaquith v. Alden we must ascertain the net result of gain or loss to the estate during the stated period, and, treating this account of direct indebtedness by itself, there was a direct loss to the estate of only $6,500, and the amount of preference could only be that sum. Restoration, not punishment, is the object of this law. It was therefore not correct to hold the entire payment of $17,500 to be a preference. It results, therefore, that, in ascertaining the amount which should be required to be paid to the trustee as a condition of proving the claim of the bank, the amount of payments upon the notes of the bankrupt discounted to third parties, to wit, $59,505.53, should be included, to which should be added the amount of preference on direct indebtedness of $6,500, making a total of $66,005.53.

The decree is reversed, and the cause is remanded, with directions to the court below to enter a decree in conformity with the views herein expressed.